**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT J. PITTS, JR.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL A. MCLEAN, CHIEF OF POLICE, LEXINGTON POLICE DEPARTMENT,<br><br>Defendant. | Case No. 1:26-cv-13441-JCB |

**AFFIDAVIT OF PAUL KOMINERS IN SUPPORT OF DEFENDANT MICHAEL A. MCLEAN'S MOTION TO DISMISS**

I, Paul Kominers, under oath depose and state as follows:

1. I am an attorney licensed to practice in Massachusetts. I am an associate at Anderson & Kreiger LLP, located at 255 State Street, Boston, MA 02109.

2. I represent Defendant Michael A. McLean, Chief of Police for Lexington, Massachusetts ("Chief"). I submit this affidavit in support of his motion to dismiss the complaint.

3. I also represented the Chief in the litigation plaintiff Robert J. Pitts, Jr., initiated in the Massachusetts state courts.

4. On July 9, 2024, Pitts filed a complaint in Concord District Court challenging the Chief's decision to deny his license to carry firearms. A true and accurate copy of that complaint is attached as Exhibit A.

5. A true and accurate copy of the docket from the Concord District Court proceedings, as displayed on https://masscourts.org, is attached as Exhibit B.

6. On December 20, 2024, the Concord District Court held an evidentiary hearing. A true and correct copy of the transcript of the hearing, is attached as Exhibit C.

7. On January 7, 2025, the Concord District Court issued its decision, which upheld the Chief's decision to deny Pitts's license to carry firearms. A true and correct copy of that decision is attached as Exhibit D.

8. On January 31, 2025, Pitts filed a complaint with the Middlesex Superior Court, seeking reversal of the Concord District Court's decision. A true and accurate copy of Pitt's Superior Court complaint is attached as Exhibit E.

9. A true and accurate copy of the docket from the Middlesex Superior Court proceedings, as displayed on https://masscourts.org, is attached as Exhibit F.

10. A true and accurate copy of Pitts's memorandum in support of his Motion for Judgment on the Pleadings in Superior Court is attached as Exhibit G.

11. A true and accurate copy of the Chief's Opposition and Cross-Motion for Judgment on the Pleadings is attached as Exhibit H.

12. On April 15, 2026, the Middlesex Superior Court affirmed the Concord District Court's decision. A true and accurate copy of the Superior Court's decision is attached as Exhibit I.

Signed under the pains and penalties of perjury this 17th day of September, 2026.

*/s/ Paul Kominers*
Paul Kominers (BBO #703581)
Anderson & Kreiger LLP

Dated: September 17, 2026

# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

TRIAL COURT OF MASSACHUSETTS
DISTRICT COURT DEPARTMENT
CONCORD DISTRICT COURT
DOCKET NO.:

ROBERT J. PITTS, JR.,

Petitioner,

v.

MICHAEL A. MCLEAN, CHIEF OF
LEXINGTON POLICE DEPARTMENT

Respondent.

**PETITION OF ROBERT J. PITTS, JR. FOR JUDICIAL REVIEW OF THE DENIAL OF HIS LICENSE TO CARRY FIREARMS**

**NOW COMES,** the Petitioner, ROBERT J. PITTS, JR., (hereinafter, the "Petitioner" or "Mr. Pitts"), and files this Petition for Judicial Review of the denial of his License to Carry Firearms, (hereinafter, "LTC"). As reasons therefore, the Petitioner asserts that Chief of Police of Lexington Police Department, Michael A. McLean, (hereinafter, the "Respondent" or "McLean"), violated the Petitioner's constitutional rights under state statutory licensing authority. The Petitioner respectfully requests this Honorable Court to reverse the Respondent's decision and order him to issue the Petitioner's LTC for reasons more fully set forth below.

**FACTS**

1. Mr. Pitts is fifty-nine (59) years old and has been a resident of Lexington, Massachusetts for approximately twenty-one (21) years;

2. He is married to a lifelong Lexington resident and has three (3) children aged twenty-three (23), nineteen (19) and seventeen (17);
3. He was a member of the Civil Air Patrol, Auxiliary of the United States Air Force for nine (9) years, rising to the rank of Lt. Colonel. He was additionally the leader of the Rifle Team and also on the Mountain Search and Rescue for the state of Connecticut and the Northeast region, receiving multiple awards in leadership and community service;
4. He graduated from Northeastern University in 1988 with degrees in Economics and Technical Drawing and subsequently began working for Bear Stearns and Fidelity in Boston, Massachusetts;
5. Mr. Pitts has been active as a sports coach in Lexington, coaching Little League as well as Lexington Bedford youth hockey. He is also a member of the board of the LBYH and has been a sponsor of an in-house team since 2012;
6. He is additionally active in many charities, including his parish, Lexington St. Brigid Church, as well as Wounded Warriors, Tunnel to Towers, The 22 Project and St. Jude's Children's Hospital;
7. Mr. Pitts has been the owner of RJ Pitts Custom Cabinets since 2000 and maintains a workshop in Arlington, Massachusetts.

## ARGUMENT

M.G.L. c. 140 §131(d) authorizes an appropriate licensing authority to issue a license to carry firearms, so long as the applicant is not a "prohibited person" as defined by the statute itself. It further provides that the licensing authority may deny an LTC application "if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee

is unsuitable to be issued or to continue to hold a license to carry." M.G.L. c. 140 §131(d) specifically defines 'unsuitability', stating, in part, that "a determination of unsuitability shall be based on: (i) reliable, articulate, and credible information that the applicant or licensee has exhibited or engaged in behavior that suggest that, if issued a license, the applicant or licensee may create a risk to public safety...". Pursuant to M.G.L. c. 140 §131(d), "The determination of unsuitability shall be subject to judicial review ...". Thus, unless such a determination is made and supported by reliable, articulate, and credible information to the effect that an applicant poses a risk to public safety, a licensing authority *must* issue a license. A prohibited person, as applied to this case, is a person convicted of "a misdemeanor punishable by imprisonment for more than 2 years". *Id.* (i)(B).

Article 1 of the Constitution of the Commonwealth of Massachusetts states that "all people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness." Mass. Const. art. I. In *District of Columbia v. Heller*, the Supreme Court of the United States of America held that the Second Amendment guaranteed an "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The First Circuit cited *Heller* in two (2) cases: in *United States v. Rene E.,* 583 F.3d 8, 11 (1st Cir. 2009), a case involving a seventeen (17) year old defendant who violated a federal prohibition on the possession of handguns by juveniles, and in *United States v. Booker,* 644 F.3d 12, 14 (1st Cir. 2011), which involved a challenge to a federal law prohibiting individuals convicted of a "misdemeanor crime of domestic violence" from possessing firearms. *Id.* at 13.

In *Rene E.*, the First Circuit observed that *Heller* read the Second Amendment "to 'guarantee the individual right to possess and carry weapons in case of confrontation' [and that] this right included a right to 'self-defense,' which the [Supreme] Court described as 'the central component of the right itself[,]' [and noted further that] 'the inherent right of self-defense has been central to the Second Amendment right.'" *Rene E.*, 583 F. 3d at 11 (quoting *Heller*, 554 U.S. at 592, 599, 628).

In its efforts to develop a standard of review, the First Circuit explained that "[w]hile we do not attempt to discern the 'core' Second Amendment right vindicated in *Heller*, we note that *Heller* stated that the Second Amendment 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Id.* at 25 n. 17 (quoting *Heller*, 554 U.S. at 635). In its *Heller* decision the Supreme Court of the United States of America addressed the history and purpose of the Second Amendment, in detail, *Heller*, *supra,* and the 2010 decision, *McDonald v. Chicago*, 130 S.Ct. 3020, 3050 (2010). Accordingly, the Second Amendment clearly and expressly protects a citizen's fundamental right to self-preservation.

The Supreme Court has ruled that the Second Amendment's right to bear arms applies to the states as well as to the federal government. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (holding Second Amendment right is incorporated against the states through Fourteenth Amendment). On January 27, 2014, the Bristol Superior Court overturned a police chief's denial of a license to carry a handgun. *See, Hill v. Provencher*, no. BRCV2013-0626-A, slip op. The court agreed with the approach of the Court of Appeals for the Seventh Circuit and found that when reviewing restrictions on the right to bear arms, "a degree of heightened scrutiny is required." *Id.* at *12-13.

The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring). The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests, the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635. The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. And the "quintessential" firearm for self-defense in America is the handgun. *Heller,* 554 U.S. at 629. "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634 (emphasis original).

The United States Supreme Court (hereinafter, "Supreme Court") has issued a trio of cases in the last fourteen (14) years concerning a citizen's gun rights under the Second Amendment: *Heller* and *McDonald*, *supra*, and in 2022, *New York State Rifle & Pistol Association, Inc. v. Bruen*, ___ U.S. ___, 142 S.Ct. 2111). The latter case invalidated a New York State requirement pertaining to carrying a firearm in public.

Important in the present matter is the fact that all three (3) decisions of the Supreme Court unanimously held that what is imperative in Second Amendment analysis is that court decisions must be based on what the understanding was of gun rights at the time the Second Amendment was passed. That is, what was the understanding in 1791 of the rights of the people to possess firearms and what restrictions were understood on those rights. Moreover, in *Bruen,*

the Court overruled all the Circuits' practices of making a "means-end scrutiny" test in a case once it was found that a claimant had made a showing that they had a Second Amendment right to possess a firearm. In effect, the *Bruen* Court held that there is no scrutiny *at all* once it is found that a claimant has a Second Amendment right to possess a firearm irrespective of any perceived Government interest.

In consideration of that historical sense, the *Heller* Court wrote that "By the time of the founding, the right to have arms had become fundamental for English subjects". 554 U.S. at 593. The right to bear arms was a "*pre-existing right*" when the Second Amendment was codified and consequently the history of bearing arms has to be considered when analyzing the Second Amendment. *Id*. 592 (emphasis in original). "Constitutional rights are enshrined within the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. 634-635.

The *Heller* line of reasoning was validated in *McDonald*. "*Heller* make it clear that [the right to bear arms] is 'deeply rooted in this Nation's history and tradition.'" 561 U.S. at 768.

In debunking the several Circuits' practices of interpreting *Heller's* Second Amendment rights to possession by attempting to justify restrictive gun laws by resorting to a means-end analysis, i.e., showing a Government interest in the enacted restrictions, the Court set down rules for *Heller*-type adjudications in *Bruen*.

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command".

142 S.Ct., pp. 2125-26. (cites omitted). The Court went on to say that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* 2127.

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command.

*Id.* 2129-30. (cites omitted). The Court explained that "reliance on history to inform the meaning of constitutional text—especially text meant to codify a *pre-existing* right—is, in our view, more legitimate, and more administrable, than asking judges to 'make difficult empirical judgments' about 'the costs and benefits of firearms restrictions,' especially given their 'lack [of] expertise' in the field. *Id.* 2130 (cites omitted). Thus, "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* 2131.

> The Second Amendment guaranteed to "all Americans" the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. *Heller,* 554 U.S. at 581, 128 S.Ct. 2783. Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials. Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense. Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to "demonstrate a special need for self-protection distinguishable from that of the general community" in

order to carry arms in public.

*Id.* 2156. Of course, the *Bruen* decision, nay, any of the trio of 2nd Amendment decisions cited above, did not decide "about who may lawfully possess a firearm." *Id.* 2157 (Alito, J., concurring).

In the instant matter, the Petitioner was ordered to appear in Cambridge District Court for a Clerk-Magistrate's Hearing. The basis for McClean's denial of Mr. Pitts' LTC application was because of an "Arlington MA incident on 12/20/22 discharging firearm numerous times in occupied building. LTC revoked and firearms confiscated as a result of the incident". See, "**Exhibit A**". Due to this alleged incident, Mr. Pitts appeared in Cambridge District Court for a Clerk-Magistrate's hearing. As a result of this hearing, no criminal charges were ultimately issued against Mr. Pitts, he was never arraigned and instead, he was given "Pre-Trial Probation" for a period of seven (7) months, which he completed successfully with no issues. When this incident occurred, Mr. Pitts was neither suicidal nor homicidal, and moreover, he subsequently successfully completed the "McLean Naukeag Residential Program". Based upon the above, Mr. Pitts is not a convicted criminal and as a result, he is not a prohibited person nor is he statutorily disqualified from possessing an LTC. There is no basis in fact or law that exists to deny his fundamental, constitutional right of self-preservation guaranteed to him by the Second Amendment of the United States Constitution and, accordingly, the denial of his LTC should be overturned and his LTC issued.

## CONCLUSION

WHEREFORE, in the interests of justice, Mr. Pitts prays:

1. For judgment that the Respondent wrongfully denied the Petitioner's LTC;
2. For an injunction preliminarily and permanently granting the Petitioner his LTC;
3. For an injunction and an award of damages adequate to compensate the Petitioner's for the suspension of his LTC;
4. For an increase in damages for the willful and wrongful denial;
5. That the Petitioner have judgment for his cost of this suit and for reasonable Attorney's Fees; and
6. For such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,
The Petitioner,
Robert J. Pitts, Jr.,
By his attorney,

DATED: July 9, 2024

*/s/ Richard C. Chambers, Jr., Esq.*

Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Facsimile: (781) 581-8449
E-mail: Richard@chamberslawoffice.com

# EXHIBIT A

A TRUE COPY OF THE RECORD
ATTEST:
CONCORD DIV.
CLERK/MAGISTRATE

06/17/2024

ROBERT J PITTS JR
0 BUCKMAN DRIVE
LEXINGTON, MA 02421

RE: Denial of Your Resident Class A Large Capacity License to Carry Firearms Application

Dear Massachusetts Firearms License Applicant:

As required by Massachusetts law, you are hereby notified that your application for a license to carry firearms has been denied in accordance with the provisions in M.G.L. c. 140, § 131.

The reason(s) for this action is/are as follows:

✔ you are deemed to be an unsuitable person with regard to this application for the following reason(s) (explain below);

Arlington MA incident on 12/20/22 discharging firearm numerous times in occupied building. LTC revoked and firearms consficated as a result of incident. ;

In accordance with M.G.L. c.140, § 129D, you are required to turn in to the police department in the city/town in which you reside, without delay, your firearms license(s) and all firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition which you have in your possession or which are owned by you. **Failure to do so is a criminal offense.**

You may transfer any of your firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition to another person who can lawfully take possession of these items, but only after you surrender them to the police department.

Finally, you have the right to appeal this denial within 90 days to the District Court with appropriate jurisdiction.

Please contact us at any time if you have any questions concerning this matter.

MICHAEL A. MCLEAN
CHIEF OF POLICE
LEXINGTON PD

cc: Commissioner of Probation
One Ashburton Place, Room 405, Boston, MA 02108

# Exhibit B

# 2447CV000175 Pitts, Jr., Robert J v. Michael McLean, Chief of Lexington Police Department

- Case Type:
- Administrative Appeals
- Case Status:
- Disposed for Statistical Purposes
- File Date
- 07/11/2024
- DCM Track:
-
- Initiating Action:
- Firearms License Appeal (c140 §131[f])
- Status Date:
- 01/07/2025
- Case Judge:
-
- Next Event:
-

All Information | Party | Docket | Disposition

## Party Information

**Pitts, Jr., Robert J**
- Plaintiff

**Alias**

**Party Attorney**
- Attorney
- Chambers, Jr., Esq., Richard Cullin
- Bar Code
- 651251
- Address
- Chambers Law Office
220 Broadway Suite 404
Lynnfield, MA 01940
- Phone Number
- (781)581-2031

More Party Information

**Michael McLean, Chief of Lexington Police Department**
- Defendant

**Alias**

**Party Attorney**

More Party Information

## Docket Information

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/11/2024 | Complaint filed | | Image |
| 09/23/2024 | Return of service on complaint and summons to Michael McLean, Chief of Lexington Police Department: Officer service SERVED to party's agent (Mass.R.Civ.P. 4(f)).<br>Served on 09/13/2024 in hand to Officer Hsiem Hsu at 1575 Massachusetts Avenue, Lexington, MA 02420. | | Image |
| 10/02/2024 | Response to the Petition of Robert J Pitts, Jr. for Judicial Review of the Denial of His License to Carry Firearms filed by Michael McLean, Chief of Lexington Police Department. | | Image |
| 10/03/2024 | Event Scheduled<br>Event: Hearing<br>Date: 10/25/2024 Time: 11:00 AM<br>Result: Reschedule of Hearing | | |
| 10/03/2024 | Form generated: | | |

| Docket Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| | Notice of Next Event(Event Notice) CV<br>Sent On: 10/03/2024 12:34:57 | | |
| 10/03/2024 | Notice concerning next court event, to wit - 10/25/2024 11:00 AM Hearing-- sent to parties. | | Image |
| 10/17/2024 | Motion to Advance and Continue Petition for Judicial Review Hearing filed by Robert J Pitts, Jr.-Plaintiff. | | Image |
| 10/18/2024 | Event Scheduled<br>Event: Hearing<br>Date: 12/20/2024 Time: 11:00 AM<br>Result: Held - under advisement | | |
| 10/18/2024 | Form generated:<br><br>Notice of Next Event(Event Notice) CV<br>Sent On: 10/18/2024 09:55:20 | | |
| 10/18/2024 | Notice concerning next court event, to wit - 12/20/2024 11:00 AM Hearing-- sent to parties. | | Image |
| 12/20/2024 | The following matter was taken under advisement: Hearing on Denial of License to Carry.<br><br>Applies To: Pitts, Jr., Robert J (Plaintiff); Michael McLean, Chief of Lexington Police Department (Defendant); Chambers, Jr., Esq., Richard Cullin (Attorney) on behalf of Pitts, Jr., Robert J (Plaintiff) | | |
| 01/07/2025 | Petition denied; parties notified.<br><br>("I find the Petitioners past behavior supports the finding of unsuitability. As such, I decline to overrule the Respondent's decision at this time and the Petition is DENIED." Lalli, J.)<br><br>Judge: Lalli, Hon. Sharon | | |
| 01/07/2025 | Case Disposition Date Entered | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Disposed | 01/07/2025 | |

# **Exhibit C**

Volume: I
Pages: 1-8
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

CONCORD, S.S. DISTRICT COURT DEPARTMENT OF THE TRIAL COURT

* * * * * * * * * * * * * * * * *

ROBERT J. PITTS, JR. * Docket No. 2447CV000175

v.

MICHAEL MCLEAN, CHIEF OF LEXINGTON POLICE DEPARTMENT

* * * * * * * * * * * * * * * * *

HEARING
BEFORE THE HONORABLE SHARON LALLI

APPEARANCES:

For the Plaintiff, Robert J. Pitts, Jr.:
Chambers Law Office
220 Broadway
Suite 404
Lynnfield, Massachusetts 01940
By: Richard Cullin Chambers, Esq.

For the Defendant, Michael McLean, Chief of Lexington Police Department:
By: Michael McLean, Pro Se

Concord, Massachusetts
Courtroom 1
December 20, 2024

Proceedings recorded by Court Personnel.
Transcript produced by Approved Court Transcriber
Michael Drake, eScribers, LLC

(Court called to order.)

(11:32 a.m.)

THE CLERK: Robert J. Pitts, Jr. versus Michael McLean, Chief of Lexington Fire Department, firearms.

MR. CHAMBERS: Petitioner, your Honor.

THE COURT: Thank you.

THE CLERK: Both parties served.

MR. CHAMBERS: Good morning.

THE CLERK: Both parties, please raise your right hands.

PARTIES, Sworn

THE COURT: Okay. Very good. I'll hear you.

MR. CHAMBERS: Thank you, your Honor. Richard Chambers on behalf of the Petitioner.

Judge, Mr. Pitts has been a longtime resident of Lexington. He's held a firearms license his entire life. He was a lieutenant colonel when he was residing in Connecticut, civil air patrol, member of the Rifle Squad. It's been an intricate part of his life owning firearms.

There was an incident that is alleged to have occurred. He has his own business. He's self-employed. And he fixes cabinets. While in his own shop, there was no public there, it's a commercial building, he had just come back from the range, one of his firearms was not working properly. He disassembled it, put it back together. It was not an accident. He meant to shoot it at a target to make sure it was working

correctly. The landlord heard the gunfire, called the police, made allegations to the police that Mr. Pitts was drinking, was depressed, et cetera. None of those allegations hold water, Judge.

If you look at the letter that has suspended his license, it specifically says because you discharged your firearm. And it says in a building open to the public. That's not correct. The building was not open to the public. It was very safe. Mr. Pitts will take the stand, if your Honor would allow it, and I would walk him through exactly what happened.

But the reason we're before you is, pursuant to the Supreme Court case in Bruen, when we look at somebody's fundamental rights to possess a firearm pursuant to the Second Amendment, the Bruen case said that you should look at it the same way the founding fathers looked at it. And it struck me as I was driving to Lexington today that this is the place where the shot was heard around the world. And what would the founding fathers say some 200 years in the future that a citizen just lost his right to carry, to own, to bear a firearm because he took a practice shot? He didn't break any laws. He was not charged with a crime for doing that.

There was a magistrate's hearing. He was not charged. He came into this court. And my argument or would -- my pleading, your Honor, is where a chief suspends somebody's license, I would say that goes beyond arbitrary and capricious because he

doesn't have a right to get it back. It's like how long is it suspended, for the rest of his life?

And the law says certain people the chief has a right to take their gun license away. And that would be someone charged with a crime, a felon, a disqualified person because of a mental defect. None of that exists here, your Honor. We have an upstanding citizen. He's a lieutenant colonel. He was on a rifle squad. He knows how to handle firearms. He lost his firearm license based on this one incident. And I would submit to your Honor, that's why we're here. That's why we have a right to judicial review. And I'd ask you to give him his gun license back. Right now it's suspended.

Based on my petition, what's before the Court, the reason for the suspension, the Supreme Court ruling in Bruen, I would ask you consider all these. And I ask you -- he's been without it since it happened. And I'd ask you to restore his Second Amendment right. It's a fundamental right, your Honor.

THE COURT: Thank you, sir.

Sir?

MR. MCLEAN: Good morning, your Honor. Michael McLean, chief of police, Lexington.

THE COURT: Thank you, sir.

MR. MCLEAN: I would -- I will agree with Mr. Pitts that he was not denied and suspended as a prohibited person, however, under the reasonable -- reasonable discretion of my authority as

the licensing authority to suspend it.

And as you well know, as an unsuitable person, it's just got to be based on reliable, articulable, and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee would create a risk to public safety. And I believe that's seen in the packet of the Arlington Police and the Lexington Police Department's reports, the events of December 20th, 2022, clearly articulate that this was something that was extremely unsafe.

And I disagree with the facts that -- this call was called in by two personal friends of Mr. Pitts who know him. And both of them reported that when they heard the -- it wasn't one gunshot. It was eight gunshots within a business in the middle of a day in a thickly settled district with an attached business to one side and residential units above, that they both thought that he had taken his life because they know that he had been struggling, in their words, depression, problems with alcohol, financial and marital problems.

And both the officers on scene, when they all got there, they did find him to be intoxicated. He had multiple firearms there and approximately 6,000 rounds of ammunition.

A clinician had to come in there from the Arlington Police Department, found that he was in a mental health crisis, and issued a Section 12 to go to the Mount Auburn Hospital.

This was an Arlington Police case. I can't speak to the reason why this was -- been through a clerk's hearing or to a -- and what the conditions were being held open to, so I can't speak to why he wasn't placed under arrest or that. But because of all of those issues, and I can get into more of them, but they're clearly cited in my response and the two police reports why we did suspend his license, yeah, and deny it.

THE COURT: Thank you. I'm going to review all the documents, and I'll take it under advisement. Thank you.

MR. CHAMBERS: Judge, if I may?

THE COURT: Yes.

MR. CHAMBERS: If you look at the letter, it does not bring up any mental health. The reason for the suspension was because of a discharge.

I do have a letter from my client's treating physician that says he was not suffering from depression or mental issues. I could give my -- the chief a copy.

THE COURT: It says he was not suffering from depression or mental health issues at the time of the incident?

MR. CHAMBERS: Yeah, that she has -- within the last seven years, no signs of symptoms of depression. If I could hand that up, your Honor.

THE COURT: Any objection?

MR. MCLEAN: No.

MR. CHAMBERS: Thank you.

MR. MCLEAN: I would like to add, your Honor, there was -- this is the first time either I or the Arlington Police Department have heard anything regarding that the gun was faulty and that they were taking target practice. It seemed like the shots were actually indiscriminate among the room he was in.

THE COURT: Very good. Thank you. I'll take it under advisement.

MR. MCLEAN: Thank you, your Honor.

MR. CHAMBERS: Judge, one thing. And I will say -- and I credit, obviously, the chief's testimony that he didn't know that. But they never talked to Mr. Pitts either. He voluntarily -- when the police came down, like, the SWAT Team with their guns drawn, he said -- they said you need to be sectioned, and he said, I'll voluntarily go. It was voluntary. He was discharged. And the chief didn't talk to him. His license was just suspended. So he never had a chance to explain it. And my retort would be this is his chance to explain it.

THE COURT: Okay. Thank you.

MR. CHAMBERS: Thank you, your Honor.

MR. MCLEAN: Thank you, your Honor.

THE CLERK: The matter is under advisement. The parties will be notified by mail.

MR. CHAMBERS: Thank you, Madam Clerk. Merry Christmas everyone.

(Hearing concluded at 11:40 a.m.)

# C E R T I F I C A T I O N

I, MICHAEL DRAKE, COURT-APPROVED TRANSCRIBER, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT FROM THE RECORD OF THE COURT PROCEEDINGS IN THE ABOVE ENTITLED MATTER.

I, MICHAEL DRAKE, FURTHER CERTIFY THAT THE FOREGOING IS IN COMPLIANCE WITH THE ADMINISTRATIVE OFFICE OF THE TRIAL COURT DIRECTIVE ON TRANSCRIPT FORMAT.

I, MICHAEL DRAKE, FURTHER CERTIFY THAT I NEITHER AM COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.



June 18, 2025

MICHAEL DRAKE — DATE

AAERT CERTIFIED TRANSCRIBER (CER-513, CET-513)

ESCRIBERS
7227 NORTH 16TH STREET
SUITE #207
PHOENIX, AZ 85020
(973) 406-2250

**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

## AUDIO ASSESSMENT FORM

***For court transcribers:*** *Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

**TODAY'S DATE:** June 18, 2025 **TRANSCRIBER NAME:** Michael Drake

**CASE NAME:** Pitts Jr. v. McLean, Chief of Lexington PD **DOCKET NUMBER:** 2447CV000175

**RECORDING DATE:** December 20, 2024 **TRANSCRIPT VOLUME:** 1 **OF** 1

---

*(circle one)* **TYPE: CD TAPE QUALITY: EXCELLENT GOOD FAIR POOR**

*(circle all that apply)* **ISSUES** *(include time stamp):*

**background noise** **time stamp:**__________

**low audio** __________

**low audio at sidebar** __________

**simultaneous speech** __________

**speaking away of microphone** __________

**other:**__________ **time stamp:**__________

**COMMENTS:**__________

## A

**above (1)** 5:16
**accident (1)** 2:24
**actually (1)** 7:5
**add (1)** 7:1
**advisement (3)** 6:9;7:7,21
**agree (1)** 4:23
**air (1)** 2:17
**alcohol (1)** 5:18
**allegations (2)** 3:2,3
**alleged (1)** 2:19
**allow (1)** 3:9
**Amendment (2)** 3:13;4:17
**ammunition (1)** 5:22
**among (1)** 7:5
**applicant (2)** 5:4,6
**approximately (1)** 5:22
**arbitrary (1)** 3:25
**argument (1)** 3:23
**Arlington (4)** 5:7,23;6:1;7:2
**around (1)** 3:17
**arrest (1)** 6:4
**articulable (1)** 5:3
**articulate (1)** 5:9
**attached (1)** 5:15
**Auburn (1)** 5:25
**authority (2)** 4:25;5:1
**away (1)** 4:4

## B

**back (4)** 2:22,24;4:1,12
**based (3)** 4:9,13;5:3
**bear (1)** 3:19
**behalf (1)** 2:13
**behavior (1)** 5:5
**beyond (1)** 3:25
**Both (5)** 2:7,9;5:12,16,20
**break (1)** 3:20
**bring (1)** 6:12
**Bruen (3)** 3:12,14;4:14
**building (3)** 2:22;3:7,8
**business (3)** 2:20;5:14,15

## C

**cabinets (1)** 2:21
**call (1)** 5:11
**called (3)** 2:1;3:1;5:11
**came (2)** 3:23;7:12
**can (1)** 6:5
**capricious (1)** 3:25
**carry (1)** 3:19
**case (3)** 3:12,14;6:1
**certain (1)** 4:3
**cetera (1)** 3:3
**CHAMBERS (11)** 2:5,8,12,12;6:10,12, 20,25;7:9,19,23
**chance (2)** 7:16,17
**charged (3)** 3:20,22;4:4
**Chief (6)** 2:4;3:24;4:3,21; 6:17;7:15
**chief's (1)** 7:10
**Christmas (1)** 7:23
**cited (1)** 6:6
**citizen (2)** 3:18;4:7
**civil (1)** 2:16
**clearly (2)** 5:9;6:6
**CLERK (5)** 2:3,7,9;7:21,23
**clerk's (1)** 6:2
**client's (1)** 6:15
**clinician (1)** 5:23
**colonel (2)** 2:16;4:7
**commercial (1)** 2:22
**concluded (1)** 7:25
**conditions (1)** 6:3
**Connecticut (1)** 2:16
**consider (1)** 4:15
**copy (1)** 6:17
**correctly (1)** 3:1
**Court (15)** 2:1,6,11;3:12,23; 4:13,14,18,22;6:8,11, 18,23;7:6,18
**create (1)** 5:6
**credible (1)** 5:3
**credit (1)** 7:10
**crime (2)** 3:21;4:5
**crisis (1)** 5:24

## D

**day (1)** 5:15
**December (1)** 5:9
**defect (1)** 4:6
**denied (1)** 4:24
**deny (1)** 6:7
**Department (3)** 2:4;5:24;7:3
**Department's (1)** 5:8
**depressed (1)** 3:3
**depression (4)** 5:18;6:16,18,21
**disagree (1)** 5:11
**disassembled (1)** 2:24
**discharge (1)** 6:14
**discharged (2)** 3:6;7:15
**discretion (1)** 4:25
**disqualified (1)** 4:5
**district (1)** 5:15
**documents (1)** 6:9
**down (1)** 7:12
**drawn (1)** 7:13
**drinking (1)** 3:2
**driving (1)** 3:16

## E

**eight (1)** 5:14
**either (2)** 7:2,11
**engaged (1)** 5:5
**entire (1)** 2:15
**et (1)** 3:3
**events (1)** 5:8
**everyone (1)** 7:24
**exactly (1)** 3:10
**exhibited (1)** 5:4
**exists (1)** 4:6
**explain (2)** 7:16,17
**extremely (1)** 5:10

## F

**facts (1)** 5:11
**fathers (2)** 3:15,17
**faulty (1)** 7:3
**felon (1)** 4:5
**financial (1)** 5:19
**find (1)** 5:21
**Fire (1)** 2:4
**firearm (4)** 3:6,13,19;4:9
**firearms (6)** 2:4,15,18,23;4:8; 5:21
**first (1)** 7:2
**fixes (1)** 2:20
**found (1)** 5:24
**founding (2)** 3:15,17
**friends (1)** 5:12
**fundamental (2)** 3:12;4:17
**future (1)** 3:18

## G

**goes (1)** 3:25
**Good (4)** 2:8,11;4:20;7:6
**gun (3)** 4:4,11;7:3
**gunfire (1)** 3:1
**guns (1)** 7:13
**gunshot (1)** 5:14
**gunshots (1)** 5:14

## H

**hand (1)** 6:21
**handle (1)** 4:8
**hands (1)** 2:9
**happened (2)** 3:10;4:16
**health (3)** 5:24;6:13,19
**hear (1)** 2:11
**heard (4)** 3:1,17;5:13;7:3
**hearing (3)** 3:22;6:2;7:25
**held (2)** 2:15;6:3
**hold (1)** 3:3

**Honor (13)**
2:5,12;3:9,24;4:6,10,17,20;6:22;7:1,8,19,20
**Hospital (1)**
5:25

**I**

**incident (3)**
2:19;4:9;6:19
**indiscriminate (1)**
7:5
**information (1)**
5:4
**into (2)**
3:23;6:5
**intoxicated (1)**
5:21
**intricate (1)**
2:17
**issued (2)**
5:5,25
**issues (3)**
6:5,16,19

**J**

**Jr (1)**
2:3
**Judge (4)**
2:14;3:4;6:10;7:9
**judicial (1)**
4:11

**K**

**knows (1)**
4:8

**L**

**landlord (1)**
3:1
**last (1)**
6:20
**law (1)**
4:3
**laws (1)**
3:20
**letter (3)**
3:5;6:12,15
**Lexington (5)**
2:4,14;3:16;4:21;5:8
**license (9)**
2:15;3:5,24;4:4,9,12;5:5;6:7;7:16
**licensee (2)**
5:4,6
**licensing (1)**
5:1
**lieutenant (2)**
2:16;4:7
**life (4)**
2:15,18;4:2;5:17
**long (1)**
4:1
**longtime (1)**
2:14
**look (4)**
3:5,12,14;6:12
**looked (1)**
3:15
**lost (2)**
3:18;4:8

**M**

**Madam (1)**
7:23
**magistrate's (1)**
3:22
**mail (1)**
7:22
**marital (1)**
5:19
**matter (1)**
7:21
**may (1)**
6:10
**McLean (8)**
2:3;4:20,20,23;6:24;7:1,8,20
**meant (1)**
2:25
**member (1)**
2:17
**mental (5)**
4:5;5:24;6:13,16,19
**Merry (1)**
7:23
**Michael (2)**
2:3;4:20
**middle (1)**
5:14
**more (1)**
6:5
**morning (2)**
2:8;4:20
**Mount (1)**
5:25
**multiple (1)**
5:21

**N**

**need (1)**
7:13
**None (2)**
3:3;4:6
**notified (1)**
7:22

**O**

**objection (1)**
6:23
**obviously (1)**
7:10
**occurred (1)**
2:19
**officers (1)**
5:20
**one (5)**
2:23;4:9;5:13,16;7:9
**open (3)**
3:7,8;6:3
**order (1)**
2:1
**own (3)**
2:20,21;3:19
**owning (1)**
2:18

**P**

**packet (1)**
5:7
**part (1)**
2:18
**parties (4)**
2:7,9,10;7:21
**patrol (1)**
2:17
**people (1)**
4:3
**person (3)**
4:5,24;5:2
**personal (1)**
5:12
**petition (1)**
4:13
**Petitioner (2)**
2:5,13
**physician (1)**
6:15
**Pitts (7)**
2:3,14;3:2,9;4:23;5:12;7:11
**place (1)**
3:16
**placed (1)**
6:4
**pleading (1)**
3:23
**please (1)**
2:9
**police (10)**
3:1,2;4:21;5:7,8,23;6:1,6;7:2,12
**possess (1)**
3:13
**practice (2)**
3:20;7:4
**problems (2)**
5:18,19
**prohibited (1)**
4:24
**properly (1)**
2:23
**public (4)**
2:21;3:7,8;5:6
**pursuant (2)**
3:11,13
**put (1)**
2:24

**R**

**raise (1)**
2:9
**range (1)**
2:23
**reason (4)**
3:11;4:13;6:2,13
**reasonable (2)**
4:25,25
**regarding (1)**
7:3
**reliable (1)**
5:3
**reported (1)**
5:13
**reports (2)**
5:8;6:6
**resident (1)**
2:14
**residential (1)**
5:16
**residing (1)**
2:16
**response (1)**
6:6
**rest (1)**
4:2
**restore (1)**
4:16
**retort (1)**
7:17
**review (2)**
4:11;6:8
**Richard (1)**
2:12
**Rifle (2)**
2:17;4:8
**right (8)**
2:9;3:19;4:1,3,11,12,17,17
**rights (1)**
3:13
**risk (1)**
5:6
**Robert (1)**
2:3
**room (1)**
7:5
**rounds (1)**
5:22
**ruling (1)**
4:14

**S**

**safe (1)**
3:8
**safety (1)**
5:6
**same (1)**
3:14
**scene (1)**
5:20
**Second (2)**
3:13;4:16
**Section (1)**
5:25
**sectioned (1)**
7:14
**seemed (1)**
7:4
**self-employed (1)**
2:20
**served (1)**
2:7
**settled (1)**
5:15
**seven (1)**
6:20
**shoot (1)**
2:25
**shop (1)**
2:21
**shot (2)**
3:16,20
**shots (1)**
7:5
**side (1)**
5:16
**signs (1)**
6:21
**somebody's (2)**
3:12,24
**someone (1)**
4:4
**speak (2)**
6:1,4
**specifically (1)**
3:6
**Squad (2)**
2:17;4:8
**stand (1)**
3:9
**struck (1)**
3:15
**struggling (1)**
5:18
**submit (1)**
4:9
**suffering (2)**
6:16,18
**suggests (1)**
5:5
**Supreme (2)**
3:11;4:14

**sure (1)**
2:25
**suspend (2)**
5:1;6:7
**suspended (5)**
3:5;4:2,12,24;7:16
**suspends (1)**
3:24
**suspension (2)**
4:14;6:13
**SWAT (1)**
7:12
**Sworn (1)**
2:10
**symptoms (1)**
6:21

**T**

**talk (1)**
7:15
**talked (1)**
7:11
**target (2)**
2:25;7:4
**Team (1)**
7:12
**testimony (1)**
7:10
**thickly (1)**
5:15
**thought (1)**
5:16
**today (1)**
3:16
**together (1)**
2:24
**took (1)**
3:19
**treating (1)**
6:15
**two (2)**
5:12;6:6

**U**

**under (5)**
4:25;6:4,9;7:6,21
**units (1)**
5:16
**unsafe (1)**
5:10
**unsuitable (1)**
5:2
**up (2)**
6:13,22
**upstanding (1)**
4:7

**V**

**versus (1)**
2:3
**voluntarily (2)**
7:12,14
**voluntary (1)**
7:14

**W**

**walk (1)**
3:10
**water (1)**
3:3
**way (1)**
3:14
**what's (1)**
4:13
**within (2)**
5:14;6:20
**without (1)**
4:15
**words (1)**
5:18
**working (2)**
2:23,25
**world (1)**
3:17

**Y**

**years (2)**
3:18;6:21

**1**

**11:32 (1)**
2:2
**11:40 (1)**
7:25
**12 (1)**
5:25

**2**

**200 (1)**
3:18
**2022 (1)**
5:9
**20th (1)**
5:9

**6**

**6,000 (1)**
5:22

# **Exhibit D**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CONCORD DISTRICT COURT
DOCKET NO. 2247CV000175

A TRUE COPY OF THE RECORD
ATTEST:
CONCORD DIV.
CLERK/MAGISTRATE

Robert Pitts,JR>
Petitioner

v.

MICHAEL MCLEAN,
LEXINGTON CHIEF OF POLICE
Respondent

**FINDINGS AND RULINGS AS TO PETIONERS COMPLAINT FOR JUDICIAL REVIEW PURSUANT TO G.L. c. 140, sec. 131(f)**

**STATEMENT OF THE CASE**

The Petitioner seeks judicial review of the Respondent's decision to suspend he License to Carry Firearms (LTC) in December of 2022. This Court has jurisdiction to hear appeal pursuant to G.L. c. 140, sec.131.

This court heard this action on December 20, 2024. Only the Respondents testified at the hearing. The Respondent did not claim Petitioner was statutorily disqualified for maintaining his LTC. The Respondent found the Petitioner to be "unsuitable" to hold an LTC. Pursuant to sec. 131.

**FINDINGS OF FACT**

The Petitioner is a 59-year-old male. The Petitioner owns R.J. Custom Cabinets. On December 20, 2022, Arlington and Lexington Police were dispatched to 1531 Massachusetts Ave. in Arlington for reports of gunshots inside a business. The initial caller indicated that after

hearing the shots he believed the Petitioner had killed himself. A second party entered the business and found the Petitioner sitting at a desk with a firearm in his hand. He reasonably believed that the Petitioner was going to commit suicide with the firearm. Both parties believed the Petitioner was struggling with depression. When officers arrived, they discovered the Petitioner to be under the influence. Officers discovered eight shell casings indicating eight rounds had been discharged. The business where the rounds were discharged is attached to another business and a residential unit above. Officers believed the Petitioner was experiencing a mental health crisis and was sectioned.

**STANDARD OF REVIEW**

A licensing authority may suspend a LTC if, in a reasonable exercise of discretion, it determines that the holder is unsuitable. To be deemed unsuitable there must be reliable, articulable, and credible information that the applicant has exhibited or engaged in behavior that suggests if issued a license the applicant may create a risk to public safety or a risk of danger to self or others. M.G.L. c. 140 sec. 131(d). Westbrook v. Pratt, Holyoke District Court 2317CV154 (May 20, 2024).

DISCUSSION:

I find the Petitioners past behavior supports the finding of unsuitability.

As such, I decline to overrule the Respondent's decision at this time and the Petition is DENIED.

By the Court

Sharon F. Lalli
Dated: 1/7/25

A TRUE COPY OF THE RECORD
ATTEST:
CONCORD DIV.
CLERK/MAGISTRATE

# Exhibit E

1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
DOCKET NO.: 2581CV254

ROBERT J. PITTS, JR.,

Plaintiff,

v.

MICHAEL A. MCLEAN, CHIEF OF LEXINGTON POLICE DEPARTMENT and JUSTICES OF THE CONCORD DIVISION OF THE DISTRICT COURT,

Defendants.

1/31/2025 MG RECEIVED

**PLAINTIFF ROBERT J. PITTS, JR.'S COMPLAINT FOR CERTIORARI REVIEW PURSUANT TO G.L. c. 249, § 4**

**INTRODUCTION**

1. The Plaintiff, Robert J. Pitts, Jr., (hereinafter, "Mr. Pitts" or the "Plaintiff") seeks Certiorari Review of a decision of the Concord District Court denying Mr. Pitts' Petition for Judicial Review of the Suspension of his License to Carry Firearms (hereinafter, "LTC"), under G.L. c. 249, § 4. See, *Findings and Rulings as to Petioners Complaint for Judicial Review Pursuant to G.L. c. 140 sec. 131(f)* (Lalli, J.) (attached hereto as "**Exhibit A**"). As grounds therefore, the Plaintiff states that his LTC was suspended by Michael A. McLean, Chief of Police for the Town of Lexington, without reliable, articulable and credible information that the Plaintiff has exhibited or engaged in behavior that suggest that he could potentially create a risk to public safety, that the decision to suspend the license by the Defendant was arbitrary, capricious and an abuse of discretion, and that the Concord District Court committed a substantial error of law by

upholding the Chief's decision, which has adversely affected the material rights of the Plaintiff.

**JURISDICTION AND VENUE**

2. The Concord District Court's action is not reviewable by a direct appeal, and, therefore, G.L. c. 249, § 4, authorizes certiorari review in this Court. See, *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42 (1993).
3. Venue is proper under G.L. c. 223, §§ 1, 5.

**PARTIES**

4. Mr. Pitts resides at 20 Buchman Drive, Lexington, Massachusetts 02421.
5. Michael A. McLean, Chief of Lexington Police Department (hereinafter, "Chief McLean") is the Chief of Police of the Town of Lexington and the licensing authority for firearms licenses issued to residents of the Town of Lexington as defined by G.L. c. 140, § 121.
6. The Justices of the Concord District Court are named as nominal defendants only.

**FACTS**

7. Mr. Brady is a sixty (60) year old resident of Lexington, Massachusetts
8. Mr. Pitts' LTC was suspended by Chief McLean on June 17, 2024 (attached hereto as "**Exhibit B**").
9. Mr. Pitts filed a timely Petition for Judicial Review of Chief McLean's decision, and a hearing was held in Concord District Court on December 20, 2024.
10. On or about January 7, 2025, the Concord District Court issued a decision denying the Plaintiff's Petition for Judicial Review. ("**Exhibit A**").
11. Plaintiff submits that the Concord District Court erred in several respects including, but

not limited to, its erroneous conclusion that (a) Chief McLean's decision was based upon reliable, articulable and credible information that was not arbitrary, capricious and an abuse of discretion; (b) Chief McLean's decision relied upon credible evidence and (c) the Court's failure to apply "heightened scrutiny", Constitutional law and the historical tradition test in reviewing Chief McLean's decision. See, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022)

12. Plaintiff is in the process of obtaining the transcripts from the hearing held on December 20, 2024 and intends to supplement his pleadings pursuant to G.L. c.249 § 4 upon receipt of the transcript.

**COUNT I: CERTIORARI REVIEW**

13. Paragraphs 1-12 are incorporated as if fully set forth herein.
14. The District Court committed errors of law which are apparent on the record, and which are described herein. These errors are so substantial and material that failure to correct them will result in manifest injustice to the Plaintiff.
15. Plaintiff has no other remedy available other than review under G.L. c. 249, § 4.
16. The District Court's decision should be reversed under G.L. c. 249, § 4 as a matter of law.

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Reverse the decision of the District Court; and

b. Grant such other and further relief as is just and equitable.

Respectfully submitted,
The Plaintiff,
Robert J. Pitts, Jr.,
By his attorney,

DATED: January 31, 2025

/s/ Richard C. Chambers, Jr., Esq.
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

# EXHIBIT A

Date Filed 1/31/2025 2:02 PM
Superior Court - Middlesex
Docket Number

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CONCORD DISTRICT COURT
DOCKET NO. 2247CV000175

Robert Pitts,JR>
Petitioner

v.

MICHAEL MCLEAN,
LEXINGTON CHIEF OF POLICE
Respondent

**FINDINGS AND RULINGS AS TO PETIONERS COMPLAINT FOR JUDICIAL REVIEW PURSUANT TO G.L. c. 140, sec. 131(f)**

**STATEMENT OF THE CASE**

The Petitioner seeks judicial review of the Respondent's decision to suspend he License to Carry Firearms (LTC) in December of 2022. This Court has jurisdiction to hear appeal pursuant to G.L. c. 140, sec.131.

This court heard this action on December 20, 2024. Only the Respondents testified at the hearing. The Respondent did not claim Petitioner was statutorily disqualified for maintaining his LTC. The Respondent found the Petitioner to be "unsuitable" to hold an LTC. Pursuant to sec. 131.

**FINDINGS OF FACT**

The Petitioner is a 59-year-old male. The Petitioner owns R.J. Custom Cabinets. On December 20, 2022, Arlington and Lexington Police were dispatched to 1531 Massachusetts Ave. in Arlington for reports of gunshots inside a business. The initial caller indicated that after

hearing the shots he believed the Petitioner had killed himself. A second party entered the business and found the Petitioner sitting at a desk with a firearm in his hand. He reasonably believed that the Petitioner was going to commit suicide with the firearm. Both parties believed the Petitioner was struggling with depression. When officers arrived, they discovered the Petitioner to be under the influence. Officers discovered eight shell casings indicating eight rounds had been discharged. The business where the rounds were discharged is attached to another business and a residential unit above. Officers believed the Petitioner was experiencing a mental health crisis and was sectioned.

**STANDARD OF REVIEW**

A licensing authority may suspend a LTC if, in a reasonable exercise of discretion, it determines that the holder is unsuitable. To be deemed unsuitable there must be reliable, articulable, and credible information that the applicant has exhibited or engaged in behavior that suggests if issued a license the applicant may create a risk to public safety or a risk of danger to self or others. M.G.L. c. 140 sec. 131(d). Westbrook v. Pratt, Holyoke District Court 2317CV154 (May 20, 2024).

DISCUSSION:

I find the Petitioners past behavior supports the finding of unsuitability.

As such, I decline to overrule the Respondent's decision at this time and the Petition is DENIED.

By the Court
[signature]
Sharon F. Lalli
Dated: 1/7/25

Date Filed 1/31/2025 2:02 PM
Superior Court - Middlesex
Docket Number

# EXHIBIT B

Date Filed 1/31/2025 2:02 PM
Superior Court - Middlesex
Docket Number

12/20/2022

ROBERT J PITTS JR
20 BUCKMAN DRIVE
LEXINGTON, MA 02421

RE: Suspension of Your Resident Class A Large Capacity License to Carry Firearms, License Number: 12927500A

Dear Massachusetts Firearms License Holder:

As required by Massachusetts law, you are hereby notified that your license to carry firearms has been suspended in accordance with the provisions in M.G.L. c. 140, § 131.

The reason(s) for this action is/are as follows:

✔ you are deemed to be an unsuitable person with regard to this application for the following reason(s) (explain below);

On 12/20/2022 you fired multiple shots within a building in Arlington, MA. This was done at a time when the building was open for business. The building location was 1531 Massachusetts Avenue, Arlington, MA 02476;

In accordance with M.G.L. c.140, § 129D, you are required to turn in to the police department in the city/town in which you reside, without delay, your firearms license(s) and all firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition which you have in your possession or which are owned by you. **Failure to do so is a criminal offense.**

You may transfer any of your firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition to another person who can lawfully take possession of these items, but only after you surrender them to the police department.

Finally, you have the right to appeal this suspension within 90 days to the District Court with appropriate jurisdiction.

Please contact us at any time if you have any questions concerning this matter.

MICHAEL A. MCLEAN
CHIEF OF POLICE
LEXINGTON PD

cc: Commissioner of Probation
One Ashburton Place, Room 405, Boston, MA 02108

# **Exhibit F**

# 2581CV00254 Pitts, Jr., Robert J vs. Michael A. McLean, Chief of Lexington Police Department et al

- Case Type:
- Administrative Civil Actions
- Case Status:
- Open
- File Date
- 01/31/2025
- DCM Track:
- X - Accelerated
- Initiating Action:
- Certiorari Action, G. L. c. 249 § 4
- Status Date:
- 01/31/2025
- Case Judge:
-
- Next Event:
-

All Information | Party | Event | Tickler | Docket | Disposition

## Party Information

**Pitts, Jr., Robert J**
- Plaintiff

**Alias**

**Party Attorney**
- Attorney
- Chambers, Jr., Esq., Richard Cullin
- Bar Code
- 651251
- Address
- Chambers Law Office
220 Broadway Suite 404
Lynnfield, MA 01940
- Phone Number
- (781)581-2031

**More Party Information**

**Michael A. McLean, Chief of Lexington Police Department**
- Defendant

**Alias**

**Party Attorney**
- Attorney
- Bowser, Esq., Matthew R
- Bar Code
- 710769
- Address
- Anderson and Kreiger LLP
255 State St
10th Floor
Boston, MA 02109
- Phone Number
- (617)621-6506
- Attorney
- Kominers, Esq., Paul M
- Bar Code
- 703581
- Address
- Anderson and Kreiger
50 Milk St
Boston, MA 02109
- Phone Number
- (617)621-6538
- Attorney
- Marshall, Esq., Christina
- Bar Code
- 688348
- Address
- Anderson and Kreiger LLP
255 State St

10th Floor
Boston, MA 02109
- Phone Number
- (617)621-6500

More Party Information

**Justices of the Concord Division of the District Court**
- Defendant

**Alias**

**Party Attorney**
- Attorney
- Czugh, Esq., Arthur John
- Bar Code
- 696269
- Address
- Executive Office of the Trial Court
  1 Center Plaza
  9th Floor
  Boston, MA 02108
- Phone Number
- (617)878-0320
- Attorney
- Sullivan, Esq., Daniel P
- Bar Code
- 549788
- Address
- Executive Office of the Trial Court
  One Center Plaza Suite 901
  Boston, MA 02108
- Phone Number
- (617)878-0210

More Party Information

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 01/22/2026 03:00 PM | Civil D Rm 620 | Courtroom 620 | Hearing for Judgment on Pleading | | Rescheduled |
| 04/14/2026 03:00 PM | Civil D Rm 620 | Courtroom 620 | Hearing for Judgment on Pleading | Rooney, Hon. Lynn C | Held - Under advisement |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 01/31/2025 | 05/01/2025 | 90 | 04/21/2026 |
| Judgment | 01/31/2025 | 02/02/2026 | 367 | 04/21/2026 |
| Under Advisement | 04/14/2026 | 05/14/2026 | 30 | 04/21/2026 |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 01/31/2025 | Complaint electronically filed. | 1 | Image |
| 01/31/2025 | Civil action cover sheet filed. | 2 | Image |
| 01/31/2025 | Case assigned to:<br>DCM Track X - Accelerated was added on 01/31/2025 | | |
| 02/24/2025 | Attorney appearance<br>On this date Paul M Kominers, Esq. added as Private Counsel for Defendant Michael A. McLean, Chief of Lexington Police Department | | |
| 02/24/2025 | Service Returned for<br>Defendant Michael A. McLean, Chief of Lexington Police Department: Service accepted by counsel; | 3 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 02/26/2025 | Received from<br>Defendant Michael A. McLean, Chief of Lexington Police Department: Answer to original complaint; | 4 | Image |
| 02/26/2025 | Attorney appearance<br>On this date Christina Marshall, Esq. added as Private Counsel for Defendant Michael A. McLean, Chief of Lexington Police Department | | |
| 02/26/2025 | Attorney appearance<br>On this date Matthew R Bowser, Esq. added as Private Counsel for Defendant Michael A. McLean, Chief of Lexington Police Department | | |
| 04/22/2025 | Service Returned for<br>Defendant Justices of the Concord Division of the District Court: Service through person in charge / agent;<br><br>Kylie O'Donnell on 4/10/25 at 1 Pemberton Square, Boston, MA 02108 | 5 | Image |
| 07/07/2025 | Administrative Records filed<br><br>Applies To: Justices of the Concord Division of the District Court (Defendant) | 6 | Image |
| 07/07/2025 | Attorney appearance<br>On this date Daniel P Sullivan, Esq. added as Private Counsel for Defendant Justices of the Concord Division of the District Court | | |
| 07/07/2025 | Attorney appearance<br>On this date Arthur John Czugh, Esq. added as Private Counsel for Defendant Justices of the Concord Division of the District Court | | |
| 08/26/2025 | Plaintiff, Defendants Robert J Pitts, Jr., Michael A. McLean, Chief of Lexington Police Department, Justices of the Concord Division of the District Court's Joint Motion to extend deadlines. | 7 | Image |
| 08/27/2025 | Endorsement on Motion to Extend Deadlines (#7.0): ALLOWED<br>Joint motion ALLOWED. Plaintiff's motion for judgment on the pleadings shall be filed by 9/4/25 and Defendant McLean shall file a response by 10/16/25.<br><br>Judge: Haggan, Hon. Patrick | | Image |
| 09/02/2025 | Plaintiff Robert J Pitts, Jr.'s Motion for Judgment on the Pleadings | 8 | Image |
| 09/02/2025 | Robert J Pitts, Jr.'s Memorandum in support of Motion for Judgment on the Pleadings | 8.1 | Image |
| 10/16/2025 | Respondent Michael A. McLean, Chief of Lexington Police Department's Submission of Opposition to Petitioner's Motion For Judgment on the Pleadings and Cross-Motion For Judgment on the Pleadings | 9 | Image |
| 11/26/2025 | Event Result:: Hearing for Judgment on Pleading scheduled on:<br>01/22/2026 03:00 PM<br>Has been: Rescheduled For the following reason: By Court prior to date<br>Hon. Emily A Karstetter, Presiding | | |
| 04/09/2026 | Defendant Michael A. McLean, Chief of Lexington Police Department's Notice of Supplemental Authority | 10 | Image |
| 04/14/2026 | Matter taken under advisement: Hearing for Judgment on Pleading scheduled on:<br>04/14/2026 03:00 PM<br>Has been: Held - Under advisement<br>Hon. Lynn C Rooney, Presiding<br>Appeared:<br>Plaintiff Robert J Pitts, Jr.<br>Richard Cullin Chambers, Jr., Esq.,<br>Defendant<br>Paul M Kominers, Esq., Private Counsel<br>Staff:<br>Emily Jackson, Assistant Clerk Magistrate | | |
| 04/21/2026 | MEMORANDUM & ORDER:<br><br>ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS<br>Papers #8 & #9<br><br>ORDER (page 5)<br><br>The Plaintiff's motion for judgment on the pleadings is DENIED and the Defendant's cross-motion for judgment on the pleadings is ALLOWED.<br><br>SO ORDERED<br><br>Lynn C. Rooney | 11 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| | Justice of the Superior Court<br><br>Dated: April 15, 2026<br><br>(see scanned image for full contents of memorandum and order, 5 pages)<br><br>Judge: Rooney, Hon. Lynn C | | |
| 04/21/2026 | JUDGMENT on the Pleadings entered:<br><br>After hearing and consideration thereof; the Plaintiff's motion for judgment on the pleadings is DENIED and the Defendant's cross-motion for judgment on the pleadings is ALLOWED.<br><br>It is ORDERED and ADJUDGED:<br>The Concord District Court's decision affirming the Lexington Chief of Police Department's denial of the plaintiff's application for a license to carry firearms is hereby AFFIRMED by the Superior Court.<br><br>Judge: Rooney, Hon. Lynn C | 12 | Image |
| 04/21/2026 | Docket Note: Paper # 11 & # 12 emailed to counsel of record this day, 4/21/2026. | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment after Finding on Motion | 04/21/2026 | |

# **Exhibit G**

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
DOCKET NO.: 2581CV00254

ROBERT J. PITTS, JR.,

Plaintiff,

v.

MICHAEL A. MCLEAN, CHIEF OF LEXINGTON POLICE DEPARTMENT and JUSTICES OF THE CONCORD DIVISION OF THE DISTRICT COURT,

Defendants.

RECEIVED
9/2/2025

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

Plaintiff, Robert J. Pitts, Jr. (hereinafter, the "Plaintiff" or "Mr. Pitts") moves this Honorable Court, pursuant to Mass. R. Civ. P. 12(c) for Judgment on the Pleadings. Plaintiff respectfully requests that this Honorable Court vacates the Concord District Court's *Findings and Rulings* and remand this matter for further proceedings.

The *Findings and Rulings* of the Court, issued by the Honorable Judge Sharon F. Lalli, is attached hereto as "**Exhibit A**".

## II. STATEMENT OF RELEVANT FACTS

1. Mr. Pitts is sixty (60) years old and has been a resident of Lexington, Massachusetts for approximately twenty-two (22) years.
2. He is married to a lifelong Lexington resident and has three (3) children.
3. He was a member of the Civil Air Patrol, Auxiliary of the United States Air Force for

nine (9) years, rising to the rank of Lt. Colonel. He was additionally the leader of the Rifle Team and also a member of the Mountain Search and Rescue for the State of Connecticut and Northeast region, receiving multiple awards in leadership and community service.

4. He graduated from Northeastern University in 1988 with degrees in Economics and Technical Drawing and subsequently began working for Bear Stearns and Fidelity in Boston, Massachusetts.

5. Mr. Pitts has been active as a sports coach in Lexington, coaching Little League as well as Lexington Bedford youth hockey. He is also a member of the board of the LBYH and has been a sponsor of an in-house team since 2012.

6. He is also active in many charities, including his parish, Lexington St. Brigid Church, as well as Wounded Warriors, Tunnel to Towers, The 22 Project and St. Jude's Children's Hospital.

7. Mr. Pitts has been the owner of RJ Pitts Custom Cabinets since 2000 and maintains a workshop in Arlington, Massachusetts.

8. The licensing authority for the Town of Lexington at the time of Plaintiff's License to Carry (hereinafter, "LTC") denial was Michael A. McLean, Chief of Lexington Police Department (hereinafter, "Defendant" or "Chief McLean").

9. On or about June 17, 2024, Chief McLean denied Plaintiff's LTC application in accordance with the provisions of M.G.L. c. 140 § 131.

10. The denial of Plaintiff's LTC application was due to "Arlington MA incident on 12/20/22 discharging firearm numerous times in occupied building. LTC revoked and firearms consficated [sic] as a result of incident". A copy of the denial letter is attached hereto as

**"Exhibit B"**.

11. A hearing on Mr. Pitts' Petition for Judicial Review was held on December 20, 2024 at the Concord District Court before the Honorable Judge Sharon F. Lalli.
12. On January 7, 2025, the Honorable Judge Sharon F. Lalli denied Plaintiff's Petition for Judicial Review.

## III. STANDARD OF REVIEW

Certiorari review, under G. L. c. 249, § 4, is to "correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise review-able by motion or appeal." Judicial review of the District Court's judgment entered under G. L. c. 140, § 131, is available in the Superior Court by an action in the nature of certiorari. *Police Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. 767, 770-771 (1999). Review by the Superior Court is limited to the record of the District Court. *Godfrey v. Chief of Police of Wellsley*, 35 Mass. App. Ct. 42, 47 (1993). Certiorari review is to correct substantial errors of law apparent on the record adversely affecting material rights. *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 902 (2003); *Police Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. at 770. An erroneous reinstatement of a firearms license adversely affects material rights. *Police Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. at 771.

## IV. STATUTORY PROVISIONS REGARDING FIREARMS LICENSING

Generally, residents of Massachusetts may not own or possess a firearm unless they have been issued an LTC under G. L. c. 140, § 131, or a firearm identification card under G. L. c. 140, § 129B. The Colonel (or his designee) has "considerable latitude" in deciding whether to issue such licenses. *Ruggiero v. Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 259 (1984). A firearms license may not be issued to a person who has been convicted of a felony, or a

misdemeanor punishable by imprisonment for more than two years. G. L. c. 140, § 131 (d) (i) (a) and (b). Under G. L. c. 140, § 131(f), a LTC "may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such a license."

An applicant or holder aggrieved by a license revocation may seek judicial review in the District Court in the jurisdiction where the application was filed. G. L. c. 140, § 131(f). Under G.L. c. 140, § 131(f), the applicant whose firearms license was revoked has the burden to show that the denial or revocation was "arbitrary, capricious, or an abuse of discretion"; further, the applicant has the burden of producing "substantial evidence that he is a proper person to hold a license to carry a firearm." *Chief of Police of Shelburne v. Mover*, 16 Mass. App. Ct. 543, 546 (1983); see *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 46-48 (1993); *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 902 (2003) (Chief has broad discretion to determine who is "suitable person"). A decision is arbitrary or capricious, or an abuse of discretion, only if it lacks a "rational basis," *Receiver of Boston Housing Authority v. Commissioner of Labor and Industries*, 396 Mass. 50, 58 (1985); or "lacks any rational explanation that reasonable persons might support," *Doe v. Superintendent of Schools of Stoughton,* 437 Mass. 1, 6 (2002) or there is an "absence of any conceivable grounds upon which [the Colonel] may be upheld," *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 776 (1980) (citations omitted).

After hearing, the District Court may reinstate an LTC only if the Court "finds that there was no reasonable ground for denying, suspending or revoking such license and that the petitioner is not prohibited by law from possessing same." G. L. c. 140, § 131(f). This finding must be based on the licensee satisfying his burden of showing that the Colonel's decision was

arbitrary, capricious, or an abuse of discretion. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. at 48.

## V. ARGUMENT

### The Court's Conclusion that Plaintiff is not a Suitable Person to possess a License to Carry should be Reversed by the Superior Court.

The "suitability" standard requires the licensing authority to articulate reasonable grounds in writing when revoking, denying or suspending a license to carry firearms which is then subject to judicial review. See G. L. c. 140, § 131(f). In the present case, there are no reasonable grounds for a finding of unsuitability, and none were sufficiently articulated. Additionally, with respect to the issue at hand, Mr. Pitts appeared in Cambridge District Court for a Clerk-Magistrate's hearing. As a result of the hearing, no criminal charges were ultimately issued against Mr. Pitts, he was never arraigned, and instead, he was given "Pre-Trial Probation" for a period of seven (7) months, which he completed successfully with no issues.

As has been noted, the "suitability" standard was established for the purpose of keeping firearms out the hands of irresponsible individuals who pose a danger to public safety. See *Ruggiero v. Police Com'r of Boston, 18 Mass, App. Ct. 256 at 258-59.* In the context of G. L. c. 140, § 131, a "suitable person" is on who is "sufficiently responsible - to be entrusted with a license to carry firearms." *Wetherbee v. Costerus, 2001 WL 716915, (Mass.Super.Ct. 2001).* "[C]haracter is a necessary qualification" for being a suitable person to be entrusted with a deadly weapon. *DeLuca, 415 Mass. at 159-60;* see also *Charbonier v. Chief of Police of Melrose, 66 Mass. App. Ct. 1105, (2006)* ("criminal conviction is not required to support a determination that a person is unsuitable to carry a gun."). Under the statute, the suitability provision is one component in ensuring that an individual is "responsible," the same quality for which the Supreme Court in Heller relied upon. See Heller, 554 U.S. at 635. As such, the

"suitable person" standard was narrowly tailored as it vested in licensing authorities the ability to identify individuals, on a case-by-case manner, who may not be excluded by a categorical disqualifier but who have exhibited characteristics of irresponsible or violent behavior.

"A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support." *Cambridge v. Civil Serv. Comm'n.*, 43 Mass.App.Ct. 300, 303 (1997); see *Simkin*, 466 Mass. at 181 (noting that a decision may be considered arbitrary and capricious where "no reasonable ground" exists to support it).

G. L. c. 140, § 131(f): "In order to direct that such a license [firearm's license] be issued or reinstated over the Chief's [denial, suspension or revocation] a judge must 'find[] that there was no reasonable ground for denying, suspending or revoking such license...'" *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct 901, 902 (2003) (quoting G. L. c. 140, S 131(f)) (emphasis added). "To warrant a finding that a chief of police had no reasonable ground for denying [revoking] a license to carry firearms it must be shown that the denial [revocation] was arbitrary, capricious, or an abuse of discretion." *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 546 (1983).

A decision is arbitrary and capricious if it is a "willful and unreasoning action without consideration and in disregard of facts and circumstances." *Long v. Commissioner of Public Safety*, 26 Mass. App. Ct. 61, 65 (1988). Arbitrary and capricious has further been defined as "supported by no grounds which reasonable men might deem proper to support it," as "devoid of any conceivable ground upon which [the decision] may be upheld," or "impossible by any reasonable construction to be interpreted in harmony with the legislative mandate." *Davis v. Zoning Board of Chatham*, 52 Mass. App. Ct. 349, 357 n.11 (2001). Moreover, under G. L. c. 140, § 131(f), "[t]he burden is on the applicant to produce substantial evidence that he is a proper

person to hold a license to carry a firearm." *Chief of Police of Shelburne*, 16 Mass. App. Ct. at 546.

**The New Framework Under Bruen.**

As the Supreme Court recently held in *Bruen*, in the years since *Heller* and *McDonald*, "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 142 S.Ct. at 2125. "At the first step, the government may justify its regulation by 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.'" *Id.* at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). "If the government can prove that the regulated conduct falls beyond the Amendment's original scope" based on "its historical meaning," ""the analysis can stop there"" because ""the regulated activity is categorically unprotected"" under this test. *Id.* (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). "But if the historical evidence at this step is 'inconclusive or suggests that the regulated activity is not categorically unprotected,' the courts generally proceed to step two." *Id.* (quoting *Kanter*, 919 F.3d at 441).

"At the second step, courts often analyze 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right,'" *Bruen*, 142 S.Ct. at 2126 (quoting *Kanter*, 919 F.3d at 441), while "generally maintain[ing] 'that the core Second Amendment right is limited to self-defense *in the home*,'" *id.* (quoting *Gould v. Morgan*, 907 F.3d 659, 668-69 (1st Cir. 2018)). "If a 'core' Second Amendment right is burdened, courts apply 'strict scrutiny' and ask whether the Government can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.'" *Id.* (quoting *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017)). "Otherwise, they apply intermediate scrutiny and consider whether the Government can

show that the regulation is 'substantially related to the achievement of an important governmental interest.'" *Id.* at 2126-27 (quoting *Kachalsky v. County of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).

Here, since Mr. Pitts' Second Amendment fundamental right to carry a firearm for self-defense outside his home was taken away by the District Court, this Court must determine what level of scrutiny is appropriate and must proceed to decide whether the challenged law survives that level of scrutiny." *Id.* at 669. And, like many, this Court maintained the view that "the core Second Amendment right is limited to self-defense in the home," *Id.* at 671, a view the Supreme Court also jettisoned in *Bruen* by affirming that the right unquestionably extends outside the home. *Bruen* at 2134-35; *id.* at 2135 ("confining the right to 'bear' arms to the home would make little sense given that self-defense is 'the central component of the [Second Amendment] right itself,'" *Heller*, 554 U.S. at 599, and it "would nullify half of the Second Amendment's operative protections").

Prior to Bruen, the District Courts throughout the Commonwealth all followed the common practice of bypassing step one by assuming without deciding that the regulated conduct falls within the Second Amendment and resting the analysis on the means-ends scrutiny of step two. *See Worman v. Healey*, 922 F.3d 26, 35 (1st Cir. 2019) ("reluctant to plunge" into th[e] factbound morass" of step one, "we simply assume, albeit without deciding, that the Act burdens conduct that falls somewhere within the compass of the Second Amendment"); *Peña* v. *Lindely*, 898 F.3d 969, 976 (9th Cir. 2018).

*Bruen* rejected this test: while "[s]tep one of the predominant framework is broadly consistent with *Heller*," insofar as it is "rooted in the Second Amendment's text, as informed by history," the true test demanded by *Heller* and *McDonald* involves a single inquiry, precisely

"centered on constitutional text and history," with no means-end scrutiny at all. *Bruen*, 142 S.Ct at 2128-29; *id.* at 2129 (quoting *Heller*, 554 U.S. at 634 ("*Heller* and *McDonald* expressly rejected the application of any 'judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests'"). Under this test, the court asks only whether "the Second Amendment's plain text covers" the regulated conduct. *Id.* at 2129. If so, "the Constitution presumptively protects that conduct," and the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Stated otherwise, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Further, "*Heller* and *McDonald* point toward at least two metrics" as key factors in this analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (quoting *McDonald*, 561 U.S. at 767). Importantly, however, **in no event may courts "engage in independent means-end scrutiny under the guise of an analogical inquiry, because "the Second Amendment is the 'product of an interest balancing *by the people*," not the evolving product of federal judges**." *Id.* n. 7 (quoting *Heller*, 554 U.S. at 635) (emphasis in *Bruen*).

Here, the district court followed the same then **well-trodden path** in applying a now-invalidated "two-step" test and it took the typical detour around any textual or historical analysis

of the actual scope of the Second Amendment as it relates to the rights at stake, bypassing "step one" to just "assum[e], without deciding, that the challenged regulations touch on conduct protected by the Second Amendment." The court then immediately proceeded to "step two," where it quickly found the challenged regulations subject to the then commonly applied "intermediate" form of means-end scrutiny. In finding that the challenged regulations impose a "modest burden" on Plaintiffs, the court also emphasized the prevailing view that the Amendment secures only a limited right "'to bear arms for self-defense in one's home.'" *Id.* at 10 (quoting *Draper v. Healey*, 98 F.Supp.3d 77, 85 (D. Mass. 2015)).

Under this government-deferential standard, instead of deferring to the judgment made *by the people* as the *Bruen* standard is designed to do, the district court deemed itself bound to find the challenged regulations pass muster so long as they reflect "'a reasonable appraisal'" by the Massachusetts legislature because it could not supplant the "judgment" of the Legislature in determining the appropriate means to pursue its important interests" of protecting public safety, *id.* at 15-16 (quoting *Worman v. Healey*, 922 F.3d 26, 40 (1st Cir. 2009) ("'[t]he role of a reviewing court is limited to ensuring that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence'"). And, consistent with this highly circumscribed review of Second Amendment claims, the only "evidence" the court considered were the stated purposes declared by the legislature and a Government Accounting Office report produced in 1991, centuries after the ratification of the Second Amendment. *Id.* at 13-16. The court inevitably found the challenged regulations "pass intermediate scrutiny," compelling a conclusion that Plaintiffs' Second Amendment claim could not even survive the preliminary testing of a Rule 12(b)(6) motion. *Id.* at 16.

So, it made no effort to even argue that these regulations, first enacted in 1997, eons after the ratification of the Second Amendment, are "longstanding" in any meaningful sense of the word.

The government is now required to prove the existence of a well-established and representative historical *analogue*" that "impose[d] a *comparable* burden on the right of armed self-defense." *Bruen*, 142 S.Ct. at 2133 (second italics added).

## VI. CONCLUSION

Chief McLean failed to articulate any reasonably grounds for his finding of unsuitability. The decision "lacks any rational explanation that reasonable persons might support." *Cambridge v. Civil Serv. Comm'n.*, 43 Mass.App.Ct. 300, 303 (1997); see *Simkin*, 466 Mass. at 181 (noting that a decision may be considered arbitrary and capricious where "no reasonable ground" exists to support it). There exists no appropriate basis for a finding of unsuitability. The decision of the licensing authority was "arbitrary, capricious, and an abuse of discretion. A decision is arbitrary and capricious if it is a "willful and unreasoning action without consideration and in disregard of facts and circumstances." *Long v. Commissioner of Public Safety*, 26 Mass. App. Ct. 61, 65 (1988). The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring). The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests, the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635. The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for

self-defense within the home". *McDonald*, 561 U.S. at 780. And the "quintessential" firearm for self-defense in America is the handgun. *Heller,* 554 U.S. at 629. "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634 (emphasis original).

Based on the foregoing, the Plaintiff submits that Chief McLean's suspension of his LTC violated his fundamental right to self-defense since it was only based on alleged "incidents" in which no crime was committed, and no charges were ultimately issued against Mr. Pitts. There was no determination that the applicant "could potentially create a risk to public safety" and is therefore "unsuitable." M.G.L. c. 140, §§ 129B, 129B(1½), 131A, 131(d)(i)-(x).

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a. Reverse the decision of the District Court; and

b. Grant such other and further relief as is just and equitable.

Respectfully submitted,
The Plaintiff,
Robert J. Pitts, Jr.,
By his attorney,

DATED: September 2, 2025

Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

## CERTIFICATE OF SERVICE

I, Richard C. Chambers, Jr., Esq., Attorney for the Plaintiff, Robert J. Pitts, Jr., hereby certify that I caused a true copy of the foregoing document to be served upon the following party via e-mail as follows:

Paul M. Kominers, Esq.
Matthew R. Bowser, Esq.
Christina Marshall, Esq.
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
E-mail: pkominers@andersonkreiger.com
E-mail: mbowser@andersonkreiger.com
E-mail: cmarshall@andersonkreiger.com

DATED: September 2, 2025

Richard C. Chambers, Jr., Esq.

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

CONCORD DISTRICT COURT
DOCKET NO. 2247CV000175

Robert Pitts,JR>
Petitioner

v.

MICHAEL MCLEAN,
LEXINGTON CHIEF OF POLICE
Respondent

**FINDINGS AND RULINGS AS TO PETIONERS COMPLAINT FOR JUDICIAL REVIEW PURSUANT TO G.L. c. 140, sec. 131(f)**

**STATEMENT OF THE CASE**

The Petitioner seeks judicial review of the Respondent's decision to suspend he License to Carry Firearms (LTC) in December of 2022. This Court has jurisdiction to hear appeal pursuant to G.L. c. 140, sec.131.

This court heard this action on December 20, 2024. Only the Respondents testified at the hearing. The Respondent did not claim Petitioner was statutorily disqualified for maintaining his LTC. The Respondent found the Petitioner to be "unsuitable" to hold an LTC. Pursuant to sec. 131.

**FINDINGS OF FACT**

The Petitioner is a 59-year-old male. The Petitioner owns R.J. Custom Cabinets. On December 20, 2022, Arlington and Lexington Police were dispatched to 1531 Massachusetts Ave. in Arlington for reports of gunshots inside a business. The initial caller indicated that after

hearing the shots he believed the Petitioner had killed himself. A second party entered the business and found the Petitioner sitting at a desk with a firearm in his hand. He reasonably believed that the Petitioner was going to commit suicide with the firearm. Both parties believed the Petitioner was struggling with depression. When officers arrived, they discovered the Petitioner to be under the influence. Officers discovered eight shell casings indicating eight rounds had been discharged. The business where the rounds were discharged is attached to another business and a residential unit above. Officers believed the Petitioner was experiencing a mental health crisis and was sectioned.

**STANDARD OF REVIEW**

A licensing authority may suspend a LTC if, in a reasonable exercise of discretion, it determines that the holder is unsuitable. To be deemed unsuitable there must be reliable, articulable, and credible information that the applicant has exhibited or engaged in behavior that suggests if issued a license the applicant may create a risk to public safety or a risk of danger to self or others. M.G.L. c. 140 sec. 131(d). Westbrook v. Pratt, Holyoke District Court 2317CV154 (May 20, 2024).

DISCUSSION:

I find the Petitioners past behavior supports the finding of unsuitability.

As such, I decline to overrule the Respondent's decision at this time and the Petition is **DENIED**.

By the Court
[signature]
Sharon F. Lalli
Dated: 1/7/25

# EXHIBIT B

06/17/2024

ROBERT J PITTS JR
20 BUCKMAN DRIVE
LEXINGTON, MA 02421

RE: Denial of Your Resident Class A Large Capacity License to Carry Firearms Application

Dear Massachusetts Firearms License Applicant:

As required by Massachusetts law, you are hereby notified that your application for a license to carry firearms has been denied in accordance with the provisions in M.G.L. c. 140, § 131.

The reason(s) for this action is/are as follows:

✔ you are deemed to be an unsuitable person with regard to this application for the following reason(s) (explain below);

Arlington MA incident on 12/20/22 discharging firearm numerous times in occupied building. LTC revoked and firearms consficated as a result of incident. ;

In accordance with M.G.L. c.140, § 129D, you are required to turn in to the police department in the city/town in which you reside, without delay, your firearms license(s) and all firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition which you have in your possession or which are owned by you. **Failure to do so is a criminal offense.**

You may transfer any of your firearms, rifles, shotguns, machine guns, large capacity feeding devices, and ammunition to another person who can lawfully take possession of these items, but only after you surrender them to the police department.

Finally, you have the right to appeal this denial within 90 days to the District Court with appropriate jurisdiction.

Please contact us at any time if you have any questions concerning this matter.

MICHAEL A. MCLEAN
CHIEF OF POLICE
LEXINGTON PD

cc: Commissioner of Probation
One Ashburton Place, Room 405, Boston, MA 02108

# **Exhibit H**

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

9

D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

ROBERT J. PITTS, JR.

Petitioner,

v.

MICHAEL A. MCLEAN, CHIEF OF LEXINGTON POLICE DEPARTMENT and the JUSTICES OF THE CONCORD DIVISION OF THE DISTRICT COURT,

Respondents.

10/16/2025

Civil Action No. 2581CV00254

RECEIVED

**RESPONDENT MICHAEL A. MCLEAN'S OPPOSITION TO PETITIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS AND CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Superior Court Rule 1-96, Respondent Michael A. McLean, Chief of the Lexington Police Department, opposes Petitioner Robert J. Pitts, Jr.'s Motion for Judgment on the Pleadings and cross-moves for judgment on the pleadings. The District Court correctly found that Chief McLean had reasonable grounds for denying Pitts's application for a Class A License to Carry Firearms ("LTC") after Pitts fired eight shots indoors at his business in Arlington, Massachusetts while intoxicated and likely experiencing a mental health crisis.

A chief of police needs only a "'reasonable ground for denying a license,'" and a court may not reverse a chief's decision to withhold a license simply because they "belie[ve] that the chief should have made a different decision." *Chief of Police of Taunton* v. *Caras*, 95 Mass. App. Ct. 182, 185, 187 (2019) (quoting G.L. c. 140, § 131(f)). Here, Pitts's conduct constitutes reasonable grounds for revoking the license both because of the "disastrous consequences that" it



TH

"might have caused," *id.* at 187, and because "[t]he danger of negligent discharge of a gun in the hands of a person under the influence of . . . [alcohol] is evident," *Chief of Police of Wakefield* v. *DeSisto*, 99 Mass. App. Ct. 782, 785 (2021). Courts consistently uphold license denials, suspensions, or revocations based on such conduct. As such, this Court should deny Petitioner Robert J. Pitts, Jr.'s Motion for Judgment on the Pleadings and grant Chief McLean's Cross-Motion for Judgment on the Pleadings.

**FACTS**

The following recitation of the facts is based on the District Court's findings and evidence implicitly credited by the District Court. *See Nichols* v. *Chief of Police of Natick*, 94 Mass. App. Ct. 739, 745 (2019) ("Certiorari review is limited to making a ruling of law that does not require findings of fact, determinations of credibility, or the application of administrative expertise." [internal quotations omitted]); *In re Adoption of Hannon*, 89 Mass. App. Ct. 1118, 2016 WL 1535703, at *1 (Apr. 15, 2016) (Rule 23.0 Decision) (trial judge's "findings of fact" may be "supplemented by unchallenged evidence from the record that the judge implicitly credited").

Pitts is a fifty-nine-year-old resident of Lexington, Massachusetts who owns a cabinets business in Arlington.[1] Certified Copy of the Record of the Proceedings in the Concord Division of the District Court Department at 057.[2] In 2022, he held a license to carry firearms ("LTC")

---

[1] Pitts lists additional alleged biographical details in Paragraphs 1-7 of the "Statement of Relevant Facts" in his memorandum. Except for his age, those facts are unsupported by the District Court's findings or any sworn testimony. This Court should strike them. *Nichols*, 94 Mass. App. Ct. at 745 ("Certiorari review is limited to making a ruling of law that does not require findings of fact, determinations of credibility, or the application of administrative expertise." [internal quotations omitted]).

[2] Citations to portions of the record other than the transcript of the hearing before the District Court are formatted as "RXXXX," where XXX is the page number within the record where the

issued by the Lexington Police Department ("LPD"). R029.

On December 20, 2022, both the Arlington Police Department ("APD") and LPD responded to multiple reports of gunshots inside Pitts's business at 1531 Massachusetts Avenue in Arlington. R057. One caller had entered the business, found Pitts sitting at a desk with a firearm in his hand, and "reasonably believed" that Pitts was going to commit suicide. R058. The other heard gunshots and believed that Pitts had killed himself. R057-58. Both callers knew Pitts personally and believed that he was struggling with depression. *Id.*; Tr. at 5:11-12.

When the responding officers arrived at 1531 Massachusetts Avenue, they found Pitts under the influence of alcohol. R058. They also found eight discarded shell casings, indicating that Pitts had fired eight shots. *Id.* The responding officers "believed [Pitts] was experiencing a mental health crisis," and Pitts was eventually transported directly to Mount Auburn Hospital from the scene. R030, R058; *see* G.L. c. 123, § 12. The District Court did not make findings on the result of the Section 12 process.

**PROCEDURAL HISTORY**

The LPD immediately suspended Pitts's LTC on the basis that he was "unsuitable" because "[o]n 12/20/2022 [he] fired multiple shots within a building in Arlington, MA. This was done at a time when the building was open for business." R055, R050. Pitts did not appeal this suspension.

The APD sought charges against Pitts under G.L. c. 269, § 12E, discharging a firearm within 500 feet of an occupied dwelling or building. R031. The record is not quite clear, but it

---

cited material appears. The transcript contained within the record has different pagination from the rest of the record, so citations to the Transcript are formatted as "Tr. at X:Y-Z," where X is the page of the transcript on which the cited material starts and Y-Z is the line range of the cited material.

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

appears that Pitts appeared before a Clerk Magistrate, received probation, and agreed that he was ineligible to possess an LTC in exchange for not being charged. R012, 040-41.

In June 2024, Pitts applied for a new LTC. R025. Chief McLean denied that application on June 17, 2024. *Id.* He found Pitts unsuitable based on the "Arlington MA incident on 12/20/2022 discharging firearm numerous times in occupied building. LTC revoked and firearms confiscated as a result of incident." R030.

On July 1, 2024, Pitts filed an unverified petition in Concord District Court seeking to overturn the Chief's decision to deny him an LTC. R005-13. The District Court held an evidentiary hearing where Pitts did not testify. R056; *see also* Tr. at 1:14-4:17. After the hearing, the District Court judge issued a decision in which she credited the evidence that Pitts fired eight rounds from inside his business while under the influence, that there was good reason to believe that he was suicidal that day, and that his business was attached to another business and a residence. R057-58. Based on this "past behavior," the District Court upheld the Chief's "finding of unsuitability." R058.

## ARGUMENT

### I. Legal Standard and Procedure

A police chief may deny an application for an LTC for unsuitability upon finding "that the [holder] has exhibited or engaged in behavior that suggests that [they] may create a risk to public safety or a risk of danger to themselves or others." G.L. c. 140, § 121F(k), (u)(1) (establishing the unsuitability standard for LTC suspensions, revocations, and withholding). That finding must be "based on reliable, articulable and credible information." *Id.*

The applicant may challenge the denial of their LTC application by bringing a petition in District Court. *See* G.L. c. 140, § 121F(v)(l). There, the District Court must affirm the chief's decision unless it finds that the chief "had no reasonable ground" for denying the LTC

application. *Nichols*, 94 Mass. App. Ct. at 744. The question is not whether the District Court "belie[ves] that the chief should have made a different decision," but only whether "the licensing authority's decision is based on objective evidence reasonably suggesting that the individual would pose a risk to public safety if allowed to carry a firearm, and is not otherwise arbitrary or capricious." *Caras*, 95 Mass. App. Ct. at 187. At this hearing, the petitioner bears the burden to demonstrate their suitability. *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543, 546 (1983); *Levesque* v. *Arruda*, No. 1973CV00554, 2021 WL 1779947, at *2 (Mass. Super. Ct. Mar. 24, 2021).

After an unsuccessful petition to District Court, the applicant may appeal to Superior Court by way of a certiorari petition. "On certiorari review the Superior Court judge is limited to determining whether the District Court judge has made a 'substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff.'" *Nichols*, 94 Mass. App. Ct. at 744 (quoting *Chardin* v. *Police Comm'r of Boston*, 465 Mass. 314, 321 n.15 (2013)). The Superior Court must take the facts as found by the District Court, and may not find new facts or reverse the District Court's credibility determinations. *Id.*

## II. The District Court's Findings Show that the Chief Had Reasonable Grounds to Deny Pitts's LTC Application.

Pitts's conduct with firearms creates a risk of danger to others and himself, rendering him unsuitable. The District Court judge found that Pitts fired a gun indoors eight times while under the influence of alcohol in a space abutting another business and below a residence. The District Court judge also found that one person who knew Pitts reasonably believed him to be suicidal; a second believed he was depressed and thought upon hearing the gunshots that Pitts had killed himself; and the responding officers believed that Pitts was "experiencing a mental health crisis" requiring an immediate evaluation. R057-58.

Even one instance of recklessness with firearms constitutes reasonable grounds for a chief to find an applicant unsuitable. *See Caras*, 95 Mass. App. Ct. at 186-87. In *Caras*, the Appeals Court affirmed a finding of unsuitability where the license-holder, Caras, left an unsecured handgun alone inside his car with a family member whom he knew suffered from a substance use disorder. *Id.* at 183. The family member stole the handgun. *Id.* The court concluded that the local police chief "could reasonably determine from this incident that Caras's continued holding of a license to carry might endanger the public" despite mitigating factors: Caras self-reported the theft, no one was ultimately harmed, and the incident was an "aberration" in his life. *Id.* at 187-88. In short, the Chief could reasonably find Caras unsuitable based on "the disastrous consequences that leaving the gun unattended and unsecured . . . *might* have caused" even though those consequences did not materialize. *Id.* (emphasis added). Here, based on the evidence credited by the District Court judge, a depressed and intoxicated Pitts discharged eight rounds in the middle of the day inside a commercial space that abutted another business and a residence. This conduct could have had disastrous consequences. Even though, thankfully, those consequences did not materialize, the Chief could reasonably find Pitts unsuitable.

Similarly, the Appeals Court has repeatedly recognized that "[t]he danger of negligent discharge of a gun in the hands of a person under the influence of . . . opiates is evident." *DeSisto*, 99 Mass. App. Ct. at 785 (quoting *Nichols*, 94 Mass. App. Ct. at 747) (second alteration in original). As such, a police chief may withhold an LTC based on a known substance use disorder. *Id.*; *see also Ceeley* v. *Firearms Licensing Rev. Bd.*, 78 Mass App. Ct. 1125, 2011 WL 445841, at *1-2 (Feb. 9, 2011) (Rule 23.0 Decision) (petitioner's "long history of alcohol abuse" supported Firearms Licensing Review Board's decision not to reinstate right to carry). If

anything, the case for denying the LTC here is stronger than in *Nichols* and *DeSisto*. In both of those cases, LTC applications were denied on the basis of a substance use disorder even though the individuals never actually discharged a weapon while under the influence. Here, the "negligent discharge" that *Nichols* and *DeSisto* warned against occurred.

## III. Pitts's Arguments About the Weight of the Evidence or the Nature of His Conduct Fail.

Pitts argues that his LTC was denied "only based on alleged 'incidents' in which no crime was committed, and no charges were ultimately issued against Mr. Pitts. There was no determination that [Pitts] 'could potentially create a risk to public safety' and is therefore 'unsuitable.'" Pitts Br. at 12 (emphasis in original). This seems to be making four arguments that the Chief lacked reasonable grounds to deny Pitts an LTC. All four arguments fail.

First: Pitts argues that the "incidents" cited by the Chief were "only . . . alleged 'incidents' . . . ." Pitts Br. at 12 (emphasis in original). This argument fails because the District Court judge found that the drunken gunshots relied on by Chief McLean to deny Pitts's LTC application actually occurred, and the Superior Court may not revisit those findings. *Nichols*, 94 Mass. App. Ct. at 746. Even if this Court could revisit those findings, there is no reason to do so. Despite having the burden in District Court, *Moyer*, 16 Mass. App. Ct. at 546, Pitts did not testify or even file a sworn affidavit to contradict the Chief's version of events.

Second: Pitts argues that he is entitled to an LTC because "no crime was committed." Pitts Br. at 12. This is neither true nor relevant. A crime was committed: the first time Pitts fired his gun within 1531 Massachusetts Avenue, he committed a misdemeanor. *See* G.L. c. 269,

§ 12E. Each of the next seven shots was another misdemeanor. *Id.*[3]

The fact that he was neither charged nor convicted for those crimes is irrelevant to the suitability analysis. Conduct may be disqualifying "even though . . . no criminal prosecution" results. *DeLuca* v. *Chief of Police of Newton*, 415 Mass. 155, 159-60 (1993) (quoting *Comm'r of Metro. Dist. Comm'n* v. *Dir. of Civil Serv.*, 348 Mass. 184, 194 (1964)); *see also Covell* v. *Dep't of Soc. Servs.*, 439 Mass. 766, 779 (2003) (even acquittal does not foreclose finding by lower standard of proof and for civil purposes that crime was committed). Whether Pitts is unsuitable instead turns on whether he "pose[s] a palpable risk that [he] would not use a firearm responsibly if allowed to carry in public." *Chief of Police of Worcester* v. *Holden*, 470 Mass. 845, 854 (2015); *see also* G.L. c. 140, § 121F(k), (u)(1) (chief must have "reliable, articulable and credible information" suggesting that the applicant "may create a risk to public safety or a risk of danger to themselves or others" if allowed to carry firearms). Here, the District Court credited the essence of the multiple consistent police reports from APD and LPD officers reflecting that Pitts had, while intoxicated and plausibly suicidal, fired his gun eight times indoors in a space abutting a business and a private residence. *See* R028, R036-37 (APD reports); R043, 050 (LPD reports). The danger posed to the public and Pitts himself of these "negligent discharge[s] of a gun in the hands of a person under the influence . . . is evident." *DeSisto*, 99 Mass. App. Ct. at 785 (quoting *Nichols*, 94 Mass. App. Ct. at 747).

Third: Pitts argues that he is entitled to an LTC because "no charges were ultimately issued." Pitts Br. at 12. As explained above, this is irrelevant. It is also disingenuous. By all appearances, Pitts was not charged in part because he surrendered his LTC for a time—which

---

[3] Carrying a loaded "firearm "while under the influence of intoxicating liquor" is another misdemeanor. *See* G.L. c. 269, § 10H; *Commonwealth* v. *Veronneau*, 90 Mass. App. Ct. 477, 479-80 (2016).

suggests that the Clerk Magistrate, the District Attorney's office, and Pitts himself understood the seriousness of his conduct. R050. To argue now that Pitts should receive an LTC because he was not charged, while skipping over the fact that he was not charged because he surrendered his LTC, is sleight of hand.

Fourth: that "there was no determination that [Pitts] 'could potentially create a risk to public safety' and is therefore 'unsuitable.'" Pitts Br. at 12. This argument falls apart upon review of the District Court's decision: the District Court judge found the facts above, recited the correct standard for unsuitability, and then stated that "the Petitioners [sic] past behavior supports the finding of unsuitability."

## IV. Pitts's Constitutional Arguments Fail.

Pitts also argues that the District Court's decision violates *New York State Rifle & Pistol Ass'n* v. *Bruen*, 597 U.S. 1 (2022). Pitts Br. at 3-12. Although the argument is not quite clear, Pitts seems to be arguing that the District Court did not sufficiently analyze the constitutionality of the LTC scheme under *Bruen* as applied to him before affirming the denial of his LTC application.

There was no need to carry out such analysis. Even after *Bruen*, states may, consistent with the Second Amendment, "temporarily disarm[]" an "individual found by a court to pose a credible threat to the physical safety of another." *United States* v. *Rahimi*, 602 U.S. 680, 693 (2024); *see also Commonwealth* v. *Marquis*, 495 Mass. 434, 453 (2025) (quoting *Rahimi*). Here, the District Court's findings show that Pitts's conduct posed a credible threat to the physical safety of the public as well as to himself. The suspension of Pitts's LTC was constitutional.

Throughout this litigation, Pitts has never acknowledged *Rahimi* even though it directly addresses his *Bruen* arguments. If Pitts tries to address *Rahimi* or its progeny in his reply brief, the Court should treat that attempt as forfeited. *See Town of Boxford* v. *Mass. Highway Dep't*,

458 Mass. 596, 605 n.21 (2010) (argument raised for the first time in reply waived); *Baranofsky* v. *Rousselot Peabody, Inc.*, No. 2084CV00896-BLS2, 2020 WL 4049942, at *5 n.2 (Mass. Super. Ct. May 29, 2020) (same); Mass. Super. Ct. R. 9A(a)(3) (reply memoranda must be "limited to matters raised in the opposition that were not and could not reasonably have been anticipated and addressed in the moving party's initial memorandum").

One apparent reason that Pitts's constitutional arguments are unclear and misdirected is that many of them are directed at another decision altogether. Pitts's references to the District Court employing a "government-deferential standard," applying a pre-*Bruen* test, and considering as evidence only "the stated purposes declared by the legislature and a Government Accounting Office report produced in 1991," Pitts Br. at 10, do not refer to the decision of the District Court in this appeal. Instead, these arguments refer to a 2022 decision by the United States District Court for the District of Massachusetts in *Granata* v. *Healy*, 603 F. Supp. 3d 8 (D. Mass. 2022).[4,5]

It is unclear whether Pitts is arguing that the LTC licensing scheme is facially unconstitutional after *Bruen*. In an excess of caution, the Chief addresses it here. If Pitts is making a facial challenge, the Court should either decline to reach it because Pitts failed to notify

---

4 Pitts's counsel worked on that case and the subsequent appeal. *See id.* at 8; *Granata* v. *Campbell*, No. 22-1478, 2023 WL 4145911, *decided* Apr. 7, 2023 (1st Cir. 2023).

5 This is not the first certiorari appeal where Pitts's counsel has misattributed the reasoning of the federal judge in *Granata* to a judge in the Massachusetts District Court. The memorandum in support of Pitts's motion for judgment on the pleadings is a near-verbatim copy of a memorandum filed by Pitts's counsel in another certiorari petition, *Brady* v. *Mageary*, No. 2277CV00020 (Mass. Super. Ct.). Exhibit A attached to this brief compares counsel's brief from *Brady* and the brief here. Briefs, like this one, "copied and pasted essentially word-for-word from briefs by the attorney" and presenting "[a]rguments that are not appropriately tailored to each individual client and the facts of each case not only do the client a grave disservice, but they also undermine the principle of judicial economy." *United States* v. *Coleman*, 610 Fed. App'x 347, 356 n.3 (5th Cir. 2015); *see* Ex. A.

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

the Attorney General as required to challenge the constitutionality of a statute and waived the argument by failing to raise it in District Court, or rule against him because a recent SJC decision forecloses facial challenges to the LTC licensing scheme.

First, any complaint "draw[ing] into question" "the constitutionality of an act of the legislature" must be served on the "attorney general with sufficient time to afford [them] an opportunity to intervene." Mass. R. Civ. P. 24(d); *see Perdomo* v. *Brooks*, No. 23-P-556, 2024 WL 4259296, at *7 (Sept. 23, 2024) (Rule 23.0) (rejecting constitutional claims when petitioner failed to provide notice to the Attorney General). Pitts did not serve either his District Court complaint or his complaint here on the Attorney General, so he may not challenge the "unsuitability" standard on constitutional grounds. *See generally* Docket.

Second, Pitts did not pursue a facial constitutional challenge in District Court. "'Objections, issue, or claims—however meritorious—that have not been raised' below are waived on appeal." *Green* v. *Town of Brookline*, 53 Mass. App. Ct. 120, 128 (2001) (arguments not raised before administrative agency were waived on appeal). Pitts's petition in District Court argued about the appropriate standard of review in a Second Amendment dispute, but did not explain how that standard applied to this case. R005-12. Then, at oral argument, counsel argued that Pitts is suitable, not that the LTC licensing scheme itself was unconstitutional. Tr. at 3:11-4:17.

Third, any facial challenge would fail on its merits. Such challenges prevail only where "no set of circumstances exists" under which the challenged law would be constitutional. *Commonwealth* v. *Rodriguez*, 496 Mass. 627, 640 (2025) (quoting *Rahimi*, 602 U.S. at 693). As the SJC held recently in *Rodriguez*, "[w]hatever else may be said about the Commonwealth's resident firearm licensing scheme . . . at least 'some of its applications' [a]re constitutional"

because "the prohibition on firearm possession by felons or violent criminals . . . is consistent with the Second Amendment." *Id.* (quoting *Rahimi*, 602 U.S. at 693); *see also Marquis*, 495 Mass. at 453 (rejecting facial challenge to nonresident firearm licensing scheme on similar grounds). As such, the LTC licensing scheme is facially constitutional. Ultimately, Pitts's reliance on outdated, vague, and unpreserved constitutional arguments simply highlights the weakness of his case.

**CONCLUSION**

As Pitts observes, the Second Amendment protects "the right[s] of law-abiding, responsible citizens." *District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008). Here, the District Court credited Chief McLean's evidence and testimony, found that Pitts discharged a firearm indoors repeatedly while under the influence of alcohol and plausibly suicidal, and correctly decided that Chief McLean had a reasonable ground to deny Pitts an LTC. These findings show that Pitts behaved irresponsibly and violated the law in a manner that demonstrated his inability to safely conduct himself around firearms. The Court should deny Pitts's Motion for Judgment on the Pleadings, and grant the Chief's Cross-motion for Judgment on the Pleadings, accordingly.

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

MICHAEL A. MCLEAN, CHIEF OF
LEXINGTON POLICE DEPARTMENT,

By his attorneys,

*/s/ Paul M. Kominers*
Christina S. Marshall (BBO #688348)
cmarshall@andersonkreiger.com
Paul M. Kominers (BBO #703581)
pkominers@andersonkreiger.com
Matthew R. Bowser (BBO #710769)
mbowser@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
617-621-6500

October 16, 2025

**CERTIFICATE OF SERVICE**

I, Matthew R. Bowser, hereby certify that on October 16, 2025, I caused the foregoing to be served by email upon all counsel of record as follows:

Arthur J. Czugh
Daniel P. Sullivan
EXECUTIVE OFFICE OF THE
TRIAL COURT
One Center Plaza Suite 901
Boston, MA 02108
Arthur.czugh@jud.state.ma.us
Daniel.sullivan2@jud.state.ma.us

*Counsel for the Justices of the Concord Division of the District Court*

Richard C. Chambers, Jr.
CHAMBERS LAW OFFICE
220 Broadway, Suite 404
Lynnfield, MA 01940
richard@chamberslawoffice.com

*Counsel for Robert J. Pitts, Jr.*

*/s/ Matthew R. Bowser*
Matthew R. Bowser

# EXHIBIT A

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

**Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings**

## I. INTRODUCTION

Plaintiff, ~~SHAWN BRADY, JR~~Robert J. Pitts, Jr. (hereinafter, the "Plaintiff" or "Mr. ~~Brady~~Pitts") moves this Honorable Court, pursuant to Mass. R. Civ. P. 12(c) for ~~a~~ Judgment on the Pleadings. ~~The~~ Plaintiff respectfully ~~request~~requests that this Honorable Court ~~vacate~~vacates the ~~Lynn~~Concord District Court's ~~judgment~~Findings and Rulings and remand ~~the~~this matter for further proceedings~~ consistent with the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("Bruen").~~.

The ~~Judgment~~Findings and Rulings of the Court, issued by ~~Associate Justice Jean M. Curran, reads, in part, as follows:~~the Honorable Judge Sharon F. Lalli, is attached hereto as "Exhibit A".

"~~*The allegations noted in the police report and Lieutenant Geary's decision was not arbitrary, capricious, nor an abuse of discretion. There was a reasonable ground for suspending the plaintiff's license to carry.* " (See, "Findings and Rulings", attached hereto as "Exhibit A").~~

## II. ~~STATEMENTS~~STATEMENT OF RELEVANT FACTS

1. Mr. ~~Brady~~Pitts is ~~thirty~~sixty (~~30~~60) years old and ~~resides in Lynn~~has been a resident of Lexington, Massachusetts~~;~~ for approximately twenty-two (22) years.

~~2. Since he was fourteen (14) years old, the Plaintiff has been gainfully employed in numerous occupations, including working on construction sites, at a golf course, as a welder at Lou's Custom Exhaust and as a delivery driver. He is currently employed as Essex Bay Engineering and works part-time for the City of Lynn doing snow removal.~~

~~3. Mr. Brady is also a member of the Cape Ann Sportsman Club, in Gloucester, Massachusetts.~~

2. He is married to a lifelong Lexington resident and has three (3) children.

3. He was a member of the Civil Air Patrol, Auxiliary of the United States Air Force for nine (9) years, rising to the rank of Lt. Colonel. He was additionally the leader of the Rifle Team and also a member of the Mountain Search and Rescue for the State of Connecticut and Northeast region, receiving multiple awards in leadership and community service.

4. He graduated from Northeastern University in 1988 with degrees in Economics and Technical Drawing and subsequently began working for Bear Steams and Fidelity in Boston, Massachusetts.

5. Mr. Pitts has been active as a sports coach in Lexington, coaching Little League as well as Lexington Bedford youth hockey. He is also a member of the board of the LBYH and has been a sponsor of an in-house team since 2012.

6. He is also active in many charities, including his parish, Lexington St. Brigid Church, as well as Wounded Warriors, Tunnel to Towers, The 22 Project and St. Jude's Children's Hospital.

47. Mr. Brady has never been convicted of a disqualifying crimePitts has been the owner of RJ Pitts Custom Cabinets since 2000 and maintains a workshop in Arlington, Massachusetts.

58. The licensing authority for the CityTown of Lynn,Lexington at the time of the suspension, was the Chief of Police, Michael A. Mageary, however, Lieutenant John GearyPlaintiff's License to Carry (hereinafter, "Geary") is the designated firearms license officer for the LynnLTC") denial was Michael A. McLean, Chief of Lexington Police Department (hereinafter, "Defendant" or "Chief McLean").

69. On or about FebruaryJune 17, 2021, Geary suspended Mr. Brady's License to Carry (hereinafter, "2024, Chief McLean denied Plaintiffs LTC"), application in accordance with the provisions in MofM.G.L. c. 140 § 131.

10. The denial of Plaintiff's LTC application was due to "Arlington MA incident on 12/20/22 discharging firearm numerous times in occupied building. LTC revoked and firearms consficated [sic] as a result ofincident". A copy of the denial letter is attached hereto as "Exhibit B".

11. A hearing on Mr. Pitts' Petition for Judicial Review was held on December 20, 2024 at the Concord District Court before the Honorable Judge Sharon F. Lalli.

12. On January 7, 2025, the Honorable Judge Sharon F. Lalli denied Plaintiff's Petition for Judicial Review.

7. The suspension was "due to an incident that occurred in Wakefield, MA some time between 1/21/2021 and 1/22/2021". (See, Suspension Letter, attached hereto as "Exhibit B").

8. Geary testified at the December 2, 2021, hearing that there was no investigation done by the Lynn Police Department regarding the alleged incident referenced in the Suspension Letter and that no charges were filed as a result of this incident. (See, Hearing Transcripts, at Page 11).

At the December 2, 2021 "Petition for Judicial Review" hearing before Associate Justice Jean M. Curran, Mr. Brady, through counsel, asserted that Geary abused his discretion in determining he was unsuitable to hold an LTC. A determination of unsuitability shall be based on:

1. Reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or

2. Existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety.

Within the Commonwealth of Massachusetts, the license authority has enjoyed broad discretion and "considerable latitude" in making licensing decisions. *Firearms Records Bureau v. Sirnkin*, 466 Mass. 168,179 (2013). "When the license is either not granted or not renewed, the applicant is entitled to relief upon a petition for review only when a District Court judge finds that there was no reasonable ground for refusing such license and that the applicant was not prohibited by law from holding the same." *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42,46 (1993), quoting G.L. 140, s. 131. "That finding is warranted only upon a showing by the applicant that the

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

licensing authority's 'refusal to grant or renew the license was arbitrary, capricious, or an abuse of discretion.'" *Godfev v. Chief of Police of Welleslev*. supra quoting *Chief of Police of Shelburne v. Mover*, 16 Mass. App. Ct. 543, 546 (1983). On January 27,2014, the Bristol Superior Court overturned a police chiefs denial of a license to carry a handgun. *See Hill v. Provencher*, no. BRCV2013-0626-A, slip op. The court agreed with the approach of the Court of Appeals for the Seventh Circuit and found that the right to bear arms is a fundamental right, therefore when reviewing restrictions, a "degree of heightened scrutiny is required." *Id.* at * 12-13. This discretion may no longer be Constitutional, according to the Supreme Court of the United State's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen.*

## III. STANDARD OF REVIEW

Certiorari review, under G. L. c. 249, § 4, is to "correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise review-able by motion or appeal." Judicial review of the District Court's judgment entered under G. L. c. 140, § 131, is available in the Superior Court by an action in the nature of certiorari. Police *Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. 767, 770-771 (1999). Review by the Superior Court is limited to the record of the District Court. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 47 (1993). Certiorari review is to correct substantial errors of law apparent on the record adversely affecting material rights. *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 902 (2003); *Police Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. at 770. An erroneous reinstatement of a firearms license adversely affects material rights. *Police Commissioner of Boston v. Robinson*, 47 Mass. App. Ct. at 771.

## IV. STATUTORY PROVISIONS REGARDING FIREARMS LICENSING

Generally, residents of Massachusetts may not own or possess a firearm unless they have been issued an LTC under G. L. c. 140, § 131, or a firearm identification card under G. L. c. 140, § 129B. The Colonel (or his designee) has "considerable latitude" in deciding whether to issue such licenses. *Ruggiero v. Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 259 (1984). A firearms license may not be issued to a person who has been convicted of a felony, or a misdemeanor punishable by imprisonment for more than two years. G. L. c. 140, § 131 (d) (i) (a) and (b). Under G. L. c. 140, § 131(f), a LTC "may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such a license."

An applicant or holder aggrieved by a license revocation may seek judicial review in the District Court in the jurisdiction where the application was filed. G. L. c. 140, § 131(f). Under G.L. c. 140, § 131(f), the applicant whose firearms license was revoked has the burden to show that the denial or revocation was "arbitrary, capricious, or an abuse of discretion"; further, the applicant has the burden of producing "substantial evidence that he is a proper person to hold a license to carry a firearm." *Chief of Police of Shelburne v. Mover*, 16 Mass. App. Ct. 543, 546 (1983); *see Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 46-48 (1993); *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct. 901, 902 (2003) (Chief has broad discretion to determine who is "suitable person"). A decision is arbitrary or capricious, or an abuse of discretion, only if it lacks a "rational basis," *Receiver of Boston Housing Authority v. Commissioner of Labor and Industries*, 396 Mass. 50, 58 (1985); or "lacks any rational explanation that reasonable persons might support," *Doe v. Superintendent of Schools of Stoughton*, 437 Mass. 1, 6 (2002) or there is an

"absence of any conceivable grounds upon which [the Colonel] may be upheld," *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 776 (1980) (citations omitted).

After hearing, the District Court may reinstate an LTC only if the Court "finds that there was no reasonable ground for denying, suspending or revoking such license and that the petitioner is not prohibited by law from possessing same." G. L. c. 140, § 131(f). This finding must be based on the licensee satisfying his burden of showing that the Colonel's decision was arbitrary, capricious, or an abuse of discretion. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. at 48.

## V. ARGUMENT

**The Court's Conclusion that Plaintiff is not a Suitable Person to possess a License to Carry should be Reversed by the Superior Court.**

The "suitability" standard requires the licensing authority to articulate reasonable grounds in writing when revoking, denying or suspending a license to carry firearms which is then subject to judicial review. See G. L. c. 140, § 131(f). In the present case, there are no reasonable grounds for a finding of unsuitability, and none were sufficiently articulated. ~~There was no investigation done by the issuing police department into the alleged incident cited as the reason for Mr. Brady's suspension. Furthermore, Mr. Brady was never charged as a result of the alleged incident.~~Additionally, with respect to the issue at hand, Mr. Pitts appeared in Cambridge District Court for a Clerk-Magistrate's hearing. As a result of the hearing, no criminal charges were ultimately issued against Mr. Pitts, he was never arraigned, and instead, he was given "Pre-Trial Probation" for a period of seven (7) months, which he completed successfully with no issues.

As has been noted, the "suitability" standard was established for the purpose of keeping firearms out the hands of irresponsible individuals who pose a danger to public safety. *See Ruggiero v. Police Com'r of Boston*, 18 Mass, App. Ct. 256 at 258-59. In the context of G. L. c. 140, § 131, a "suitable person" is on who is "sufficiently responsible - to be entrusted with a license to carry firearms." *Wetherbee v. Costerus*, 2001 WL 716915, (Mass.Super.Ct. 2001). "[C]haracter is a necessary qualification" for being a suitable person to be entrusted with a deadly weapon. *DeLuca*, 415 Mass. at 159-60; *see also Charbonier v. Chief of Police of Melrose*, 66 Mass. App. Ct. 1105, (2006) ("criminal conviction is not required to support a determination that a person is unsuitable to carry a gun."). Under the statute, the suitability provision is one component in ensuring that an individual is "responsible," the same quality for which the Supreme Court in Heller relied upon. *See Heller*, 554 U.S. at 635. As such, the "suitable person" standard was narrowly tailored as it vested in licensing authorities the ability to identify individuals, on a case-by-case manner, who may not be excluded by a categorical disqualifier but who have exhibited characteristics of irresponsible or violent behavior.

"A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support." *Cambridge v. Civil Serv. Comm'n.*, 43 Mass.App.Ct. 300, 303 (1997); *see Simkin*, 466 Mass, at 181 (noting that a decision may be considered arbitrary and capricious where "no reasonable ground" exists to support it).

G. L. c. 140, § 131(f): "In order to direct that such a license [firearm's license] be issued or reinstated over the Chiefs [denial, suspension or revocation] a judge must 'find[] that there was no

reasonable ground for denying, suspending or revoking such license...'" *Howard v. Chief of Police of Wakefield*, 59 Mass. App. Ct 901, 902 (2003) (quoting G. L. c. 140, S 131(f)) (emphasis added). "To warrant a finding that a chief of police had no reasonable ground for denying [revoking] a license to carry firearms it must be shown that the denial [revocation] was arbitrary, capricious, or an abuse of discretion." *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 546 (1983).

A decision is arbitrary and capricious if it is a "willful and unreasoning action without consideration and in disregard of facts and circumstances." *Long v. Commissioner of Public Safety*, 26 Mass. App. Ct. 61, 65 (1988). Arbitrary and capricious has further been defined as "supported by no grounds which reasonable men might deem proper to support it," as "devoid of any conceivable ground upon which [the decision] may be upheld," or "impossible by any reasonable construction to be interpreted in harmony with the legislative mandate." *Davis v. Zoning Board of Chatham*, 52 Mass. App. Ct. 349, 357 n.11 (2001). Moreover, under G. L. c. 140, § 131(f), "[t]he burden is on the applicant to produce substantial evidence that he is a proper person to hold a license to carry a firearm." *Chief of Police of Shelburne*, 16 Mass. App. Ct. at 546.

**The New Framework Under Bruen.**

As the Supreme Court recently held in *Bruen,* in the years since *Heller* and *McDonald,* "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen,* 142 S.Ct. at 2125. "At the first step, the government may justify its regulation by '~~establishing~~establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.' *Id.* at 2126 (quoting *Kanter v. Barr,* 919 F.3d 437, 441 (7th Cir. 2019)). "If the government can prove that the regulated conduct falls beyond the Amendment's original scope" based on "its historical meaning," 'the analysis can stop there' because 'the regulated activity is categorically unprotected' under this test. *Id.* (quoting *United States* v. *Greeno,* 679 F.3d 510, 518 (6th Cir. 2012)). "But if the historical evidence at this step is 'inconclusive or suggests that the regulated activity is not categorically unprotected,' the courts generally proceed to step two." *Id.* (quoting *Kanter,* 919 F.3d at 441).

"At the second step, courts often analyze 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right,' *Bruen,* 142 S.Ct. at 2126 (quoting *Kanter,* 919 F.3d at 441), while "generally ~~maintaining~~maintain[ing] 'that the core Second Amendment right is limited to self-defense *in the home,'* *id.* (quoting *Gould v. Morgan,* 907 F.3d 659, 668-69 (1st Cir. 2018)). "If a 'core' Second Amendment right is burdened, courts apply 'strict scrutiny' and ask whether the Government can prove that the law is 'narrowly tailored to achieve a compelling governmental interest.' *Id.* (quoting *Kolbe* v. *Hogan,* 849 F.3d 114, 133 (4th Cir. 2017)). "Otherwise, they apply intermediate scrutiny and consider whether the Government can show that the regulation is 'substantially related to the achievement of an important governmental interest.' *Id.* at 2126-27 (quoting *Kachalsky v. County of Westchester,* 701 F.3d 81, 96 (2d Cir. 2012)).

Here, since Mr. ~~Brady's~~Pitts' Second Amendment fundamental right to carry a firearm for self-defense outside his home was taken away by the District Court, this Court must determine what level of scrutiny is appropriate and must proceed to decide whether the challenged law survives that level of scrutiny." *Id.* at 669. And, like many, this Court maintained the view that "the core

Second Amendment right is limited to self-defense in the home," ~~id.~~*Id.* at 671, a view the Supreme Court also jettisoned in *Bruen* by affirming that the right unquestionably extends outside the home. *Bruen* at 2134-35; *id.* at 2135 ("confining the right to 'bear' arms to the home would make little sense given that self-defense is 'the central component of the [Second Amendment] right itself,' *Heller,* 554 U.S. at 599, and it "would nullify half of the Second Amendment's operative protections").

Prior to Bruen, the District Courts throughout the Commonwealth all followed the common practice of bypassing step one by assuming without deciding that the regulated conduct falls within the Second Amendment and resting the analysis on the means-ends scrutiny of step two. *See Worman v. Healey,* 922 F.3d 26, 35 (1st Cir. 2019) ("reluctant to plunge" into th[e] factbound morass" of step one, "we simply assume, albeit without deciding, that the Act burdens conduct that falls somewhere within the compass of the Second Amendment"); *Pena* v. *Lindely,* 898 F.3d 969, 976 (9th Cir. 2018).

*Bruen* rejected this test: while "[s]tep one of the predominant framework is broadly consistent with *Heller,"* insofar as it is "rooted in the Second Amendment's text, as informed by history," the true test demanded by *Heller* and *McDonald* involves a single inquiry, precisely "centered on constitutional text and history," with no means-end scrutiny at all. *Bruen,* 142 S.Ct at 2128-29; *id.* at 2129 (quoting *Heller,* 554 U.S. at 634) ("*Heller* and *McDonald* expressly rejected the application of any 'judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests'"). Under this test, the court asks only whether "the Second Amendment's plain text covers" the regulated conduct. *Id.* at 2129. If so, "the Constitution presumptively protects that conduct," and the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Stated otherwise, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Further, *"Heller* and *McDonald* point toward at least two metrics" as key factors in this analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen,* 142 S.Ct. at 2133. "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *'central'* considerations when engaging in an analogical inquiry." *Id.* (quoting *McDonald,* 561 U.S. at 767). Importantly, however, **in no event may courts "engage in independent means-end scrutiny under the guise of an analogical inquiry, because "the Second Amendment is the 'product of an interest balancing *by the people,"* not the evolving product of federal judges."** *Id.* n. 7 (quoting *Heller,* 554 U.S. at 635) (emphasis in *Bruen).*

Here, the district court followed the same then **well-trodden path** in applying a now-invalidated "two-step" test and it took the typical detour around any textual or historical analysis of the actual scope of the Second Amendment as it relates to the rights at stake, bypassing "step one" to just "assum[e], without deciding, that the challenged regulations touch on conduct protected by the Second Amendment." The court then immediately proceeded to "step two," where it quickly found the challenged regulations subject to the then commonly applied "intermediate"

form of means-end scrutiny. In finding that the challenged regulations impose a "modest burden" on Plaintiffs, the court also emphasized the prevailing view that the Amendment secures only a limited right 'to bear arms for self-defense in one's home.'" *Id.* at 10 (quoting *Draper v. Healey,* 98 F.Supp.3d 77, 85 (D. Mass. 2015)).

Under this government-deferential standard, instead of deferring to the judgment made *by the people* as the *Bruen* standard is designed to do, the district court deemed itself bound to find the challenged regulations pass muster so long as they reflect 'a reasonable appraisal'" by the Massachusetts legislature because it could not supplant the "judgment" of the Legislature in determining the appropriate means to pursue its important interests" of protecting public safety, *id.* at 15-16 (quoting *Worman v. Healey,* 922 F.3d 26, 40 (1st Cir. 2009) ('[t]he role of a reviewing court is limited to ensuring that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence'"). And, consistent with this highly circumscribed review of Second Amendment claims, the only "evidence" the court considered were the stated purposes declared by the legislature and a Government Accounting Office report produced in 1991, centuries after the ratification of the Second Amendment. *Id.* at 13-16. The court inevitably found the challenged regulations "pass intermediate scrutiny," compelling a conclusion that Plaintiffs' Second Amendment claim could not even survive the preliminary testing of a Rule 12(b)(6) motion. *Id.* at 16.

So, it made no effort to even argue that these regulations—, first enacted in 1997, eons after the ratification of the Second Amendment—, are "longstanding" in any meaningful sense of the word.

The government is now required to prove the existence of a well-established and representative historical *analogue*" that "impose[d] a *comparable* burden on the right of armed self-defense." *Bruen,* 142 S.Ct. at 2133 (second italics added).

## VI. CONCLUSION

~~Geary~~Chief McLean failed to articulate any reasonably grounds for his finding of unsuitability. The decision "lacks any rational explanation that reasonable persons might support." *Cambridge v. Civil Serv. Comm'n.*, 43 Mass.App.Ct. ~~300, 303~~300,303 (1997); see *Simkin*~~.~~, 466 Mass~~.~~, at 181 (noting that a decision may be considered arbitrary and capricious where "no reasonable ground" exists to support it). There exists no appropriate basis for a finding of unsuitability. The decision of the licensing authority was "arbitrary, capricious, and an abuse of discretion. A decision is arbitrary and capricious if it is a "willful and unreasoning action without consideration and in disregard of facts and circumstances." *Long v. Commissioner of Public Safety,* 26 Mass. App. Ct. 61, *65* (1988). The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago,* 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring). The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller,* 554 U.S. 570, 592 (2008). And it "elevates above all other interests, the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635. The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home~~.~~". *McDonald,* 561 U.S. at 780. And the "quintessential" firearm for

Date Filed 10/16/2025 10:50 AM
Superior Court - Middlesex
Docket Number 2581CV00254

self-defense in America is the handgun. *Heller,* 554 U.S. at 629. "The very enumeration of the right takes out of the hands of ~~government—even~~government-even the Third Branch of ~~Government—the~~Government-the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller,* 554 U.S. at 634 (emphasis original).

Based on the foregoing, the Plaintiff submits that Chief ~~of Police, Michael A. Mageary's suspesnsion~~McLean's suspension of his LTC violated his fundamental right to self-defense since it was only based on ~~an~~ alleged "~~incident~~incidents" in which no crime was committed, and no charges were ~~pursued~~ultimately issued against Mr. Pitts. There was no determination that the applicant "could potentially create a risk to public safety" and is therefore "unsuitable." M.G.L. c. 140, §§ 129B, 129B(1½), 131A, 131(d)(i)-(x).

# **Exhibit I**

#11/

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ss.

SUPERIOR COURT
CIVIL ACTION
No. 2581CV00254

ROBERT J. PITTS, JR.

v.

MICHAEL A. MCLEAN, Chief of Lexington Police Department & the Justices of the Concord Division of the District Court

**ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS Papers #8 & #9**

Plaintiff filed an application for a license to carry firearms that was denied by the Lexington Chief of Police. Plaintiff appealed that decision to the Concord District Court where the denial was affirmed. Plaintiff now seeks certiorari review in the Superior Court.

**BACKGROUND**

Plaintiff is a fifty nine year old resident of Lexington, Massachusetts who owns a cabinet business in Arlington, Massachusetts. Certified Record of the Concord District Court hearing ("R") 027. In 2022, Plaintiff had a valid license to carry firearms ("LTC") that had been issued by the Lexington Police Department. R029 On December 20, 2022, the Arlington and Lexington Police Departments responded to the report of multiple gunshots inside Plaintiff's business at 1531 Massachusetts Avenue, Arlington, Massachusetts. R057 One caller had entered the building and found Plaintiff sitting at a desk, with a firearm in his hand, and he believed he

was intending to commit suicide. R057-058 Both 911 callers knew Plaintiff personally and expressed concerns that he was struggling with depression.

When police arrived, they found Plaintiff to be under the influence of alcohol. R058 Eight discarded shell casings were located. R058 Believing that Plaintiff was experiencing a mental health crisis, he was transported to Mount Auburn Hospital. R030, 058

Plaintiff's LTC was immediately suspended on the basis that he was "unsuitable … on 12/20/2022 [he] fired multiple shots within a building in Arlington, MA. This was done at a time when the building was open for business." R055, R050 Based on that incident, the Arlington Police Department sought charges against Plaintiff for discharging a firearm within 500 feet of an occupied building in violation of G.L. c. 269 §12E. A clerk magistrate's hearing was held and it appeared Plaintiff was given a period of pre-trial probation with an agreement that he was ineligible to possess a LTC. R012, 040-041

In June 2024, Plaintiff applied for a new LTC and Chief McLean denied the application on June 17, 2024 finding that Plaintiff remained unsuitable based on the "Arlington MA incident on 12/20/2022 discharging firearms numerous times in occupied building. LTC revoked and firearms confiscated as a result of incident." R030 R031

## DISCUSSION

"The licensing authority may deny [an] application ... if, in a reasonable exercise of discretion, the licensing authority determines that the applicant ... is unsuitable to be issued ... a license to carry." G. L. c. 140, § 131(d). "The 'suitable person' standard gives the licensing authority ... 'considerable latitude' or broad discretion in making a licensing decision." Chardin v. Police Comm'r of Boston, 465 Mass. 314, 316, (2013) quoting Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 259 (1984). The licensing authority must consider whether an

applicant is suitable or unsuitable based on "(i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety." G. L. c. 140, § 131(d). On review of a denial of a LTC, see G. L. c. 140, § 131(f), a judge of the District Court, after an evidentiary hearing, may find facts and direct the licensing authority to issue a license if the judge finds that the licensing authority had "no reasonable ground" for denying the license. Id. See Chardin, supra at 317, citing Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 44–45 (1993). A conclusion that the licensing authority lacked any reasonable ground to deny the license "is warranted only upon a showing by the applicant that the licensing authority's 'refusal [to grant ... the license] was arbitrary, capricious, or an abuse of discretion.' " Godfrey, supra at 46, quoting Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 546(1983).

On certiorari review a Superior Court judge may "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff." Nichols v. Chief of Police of Natick, 94 Mass. App. Ct. 739, 744 (quoting Chardin at 321 n. 15.)

Here, the District Court found that Plaintiff fired a gun indoors eight times while under the influence of alcohol inside a building that abutted another business and was below a residence. The District Court also found that two people who knew Plaintiff, reasonably believed him to be suffering from depression and/or was suicidal, and when police encountered Plaintiff, they believed he was experiencing a mental health crisis and had him transported to the hospital. R 057, 058 These facts certainly warranted the police chief revoking Plaintiff's license

in 2022; there was reliable and credible information that Plaintiff exhibited and engaged in behavior that created a risk to public safety.

Moreover, there is no pre-requisite that a Plaintiff be criminally charged for conduct before a chief of police can take those behaviors into account. See DeLuca v. Chief of Police of Newton, 415 Mass. 155 (1993) One incident of recklessness with firearms can constitute reasonable grounds for a chief to find an applicant unsuitable. See Chief of Police of Taunton v. Caras, 95 Mass. App. Ct. 182 (2019). The unsuitability determination rests on whether Plaintiff "poses a palpable risk that he would not use a firearm responsibly if allowed to carry in public." Chief of Police of Worcester v. Holden, 470 Mass 845, 854 (2015). Based on the record before me, I find that the District Court's decision upholding the denial of the LTC was supported in the evidence and there was no error of law.

Plaintiff also brings forward a constitutional claim that the District Court's decision violates New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, (2022). This argument is unavailing. Following Bruen, it has been made clear that states may, consistent with the Second Amendment, "temporarily disarm[] " an "individual found by a court to pose a credible threat to the physical safety of another." United States v. Rahimi, 602 U.S. 680, 693 (2023); see also Commonwealth v Marquis, 495 Mass 434, 453 (2025)(quoting Rahimi). Accordingly, this argument fails as well.

**ORDER**

The Plaintiff's motion for judgment on the pleadings is **DENIED** and the Defendant's cross-motion for judgment on the pleadings is **ALLOWED.**

SO ORDERED

Lynn C. Rooney
Justice of the Superior Court

Dated: April 15, 2026